ACCEPTED
01-14-00874-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
5/1/2015 3:26:22 PM
CHRISTOPHER PRINE
CLERK

## NO. 01-14-00874-CV

## IN THE COURT OF APPEALS
## FOR THE FIRST JUDICIAL DISTRICT OF TEXAS AT HOUSTON

FILED IN
COURT OF APPEALS
HOUSTON, TEXAS
5/1/2015 3:26:22 PM
CHRISTOPHER A. PRINE
CLERK

## IN THE INTEREST OF R.R.H., M.D.J., AND M.K., CHILDREN

**D.K.,**
APPELLANT

**DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES,**
APPELLEE

On appeal from the 300th Judicial District Court
Brazoria County, Texas | No. 74587

## APPELLANT'S BRIEF (AMENDED)

Respectfully submitted,
LAW OFFICE OF JANICE L. BERG
**Janice L. Berg**
State Bar No. 24064888
1314 Texas Avenue, Suite 1515
Houston, Texas 77002
(t) 713-993-9100 | (f) 713-225-0099
Service email: service@janiceberglaw.com
Non-service email: janice@janiceberglaw.com
**ATTORNEY FOR APPELLANT D.K.**

## ORAL ARGUMENT REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

## Appellant/Respondent (mother of the child)
**D.K.**

Representing Appellant on Appeal:
**Janice L. Berg**
State Bar No. 24064888
LAW OFFICE OF JANICE L. BERG
1314 Texas Avenue, Suite 1515
Houston, Texas 77002
Tel: (713) 993-9100 | Fax: (713) 225-0099
Service email: service@janiceberglaw.com
Non-service email: janice@janiceberglaw.com

Representing Appellant at Trial:
**Ricardo Ramos**
State Bar No. 24027648
RICCARDO L. RAMOS, PLLC
440 Louisiana, Suite 1450
Houston, Texas 77002
Tel: (713) 227-7383

**Toni Hays Kersey**
State Bar No. 24068542
126 N. Velasco
Angleton, Texas 77515
Tel: (979) 849-6464

**Blair Parker**
State Bar No. 24075829
SCOTT M. BROWN & ASSOCIATES
9330 Broadway, Ste. B308
Pearland, Texas 77584
Tel: (832) 554-1283 | Fax: (832) 548-9119
Email: blair@smbattorney.com

**Appellee/Intervenor:**
**TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES**

Representing Appellee at Trial:
**Kenyata Rico**
State Bar No. 24074665
111 E. Locust, Suite 408-A
Angleton, Texas 77515
Tel: (979) 864-1859 | Fax: (979) 849-8914
Email:

Representing Appellee on Appeal:
**Trey Picard**
State Bar No. 24027742
BRAZORIA COUNTY CHILDREN'S PROTECTIVE SERVICES UNIT,
DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES
111 East Locust Street, Suite 513A
Angleton, Texas 77515
Tel: (979) 864-1233 | Fax: (979) 864-1712
Email: treyp@brazoria-county.com

# TABLE OF CONTENTS

Identity of Parties and Counsel ...................................................................... i

Table of Contents ........................................................................................ iii

Index of Authorities ..................................................................................... vi

Statement of the Case .................................................................................... x

Statement on Oral Argument ......................................................................... x

Issues Presented For Review .......................................................................... xi

    Issue 1:    Whether counsel was improperly dismissed in violation of a statutory requirement for an ad litem attorney. ................................. xi

    Issue 2:    Whether the trial court erred by failing to appoint another attorney for Appellant after he promised to do so and she requested that he do so. ........................................................ xi

    Issue 3:    Whether the trial court erred by granting the contest to affidavit of indigence. ........................................................ xi

    Issue 4:    Whether there was sufficient evidence to support termination under Tex. Fam. Code § 161.001(1)(D). ............................... xi

    Issue 5:    Whether there was sufficient evidence to support termination under Tex. Fam. Code § 161.001(1)(E). ............................... xi

    Issue 6:    Whether there was sufficient evidence to support termination under Tex. Fam. Code § 161.001(1)(O). ............................... xi

    Issue 7:    Whether there was sufficient evidence to support the finding that termination was in the children's best interest. ........................... xi

    Issue 8:    Whether there was sufficient evidence to support the naming of the Department as permanent managing conservator of the children. ........................................................ xi

Statement of Facts ........................................................................................ 1

A. Factual background.......................................................................... 1

B. Trial court releases D.K.'s attorney ad litem after trial has already commenced ................................................................................. 4

C. Evidence at trial ............................................................................ 8

D. Trial court retroactively nullifies all prior findings of indigence ........ 10

Summary of the Argument.................................................................... 12

Argument ........................................................................................... 13

I. Standard of Review in Termination Cases.................................... 13

II. Issues 1-3: Denial of counsel and nullified presumption of indigence .... 16

A. Issue 1: The trial court reversibly erred when it released D.K.'s attorney ad litem in the middle of trial. ........................................... 17

i. Applicable law................................................................... 17

ii. Application of law to facts ................................................. 20

B. Issue 2: The trial court should have appointed new counsel for D.K. when she requested a lawyer mid-trial.................................. 22

C. Issue 3: The trial court erred by granting the untimely contest to the affidavit................................................................................. 22

D. She was harmed by the error (structural, but anyway, she was harmed. .......................................................................................... 23

III. Issue 4: The evidence at trial was legally and factually insufficient to support termination under 161.001(1)—that D.K. knowingly allowed the child to remain in dangerous conditions or surroundings. ................................................................................ 24

A. Applicable law:.............................................................................. 24

B. Application of law to facts:............................................................ 25

iv

IV.  Issue 5: The evidence at trial was legally and factually insufficient to support termination under 161.001(1)—that D.K. engaged in a continuing course of conduct that endangered the child ........................ 27

    A.  Applicable law: .................................................................. 27

    B.  Application of law to facts ................................................ 28

V.  Issue 6: The evidence at trial was legally and factually insufficient to support termination under § 161.001(1)(O)—failure to comply with a family service plan when child is taken as a result of abuse or neglect of that child. ................................................................... 29

    A.  Applicable Law: Section 161.001(1)(O) ............................. 29

    B.  There is legally and factually insufficient evidence that D.K. failed to comply with that family service plan. ............... 31

VI.  Issue 7: The evidence at trial was legally and factually insufficient to support a finding that termination was in the children's best interest. .................................................................................... 31

    A.  Applicable Law: There is a presumption that it is in the best interest of the child to have a natural parent as managing conservator. ................................................................... 31

    B.  Application of the *Holley* factors and parental presumption to the case at hand. ............................................................. 33

VII.  Issue 8: If this Court finds that the judgment terminating Appellant's parental rights should be reversed, whether the appointment of the Department as the sole managing conservator of the child should also be reversed. ................................................................... 36

Prayer .................................................................................................. 39

Certificate of Word Count Compliance ............................................... 39

Certificate of Service ........................................................................... 40

# INDEX OF AUTHORITIES

**Cases**

*Allred v. Lowry*, 597 S.W.2d 353 (Tex. 1980)..................................................................19

*B.J.M. v. State*, 997 S.W.2d 626 (Tex. App. Dallas 1998, no pet) ........................19

*Clark v. Dearen*, 715 S.W.2d 364 (Tex. App.—Houston [1st Dist.] 1987, no writ) ..................................................................................................................................32

*Davis v. State*, 228 S.W.3d 917 (Tex. App.—Waco 2007, no pet.) ......................24

*Doyle v. Texas Dep't of Protective and Reg. Servs.*, 16 S.W.3d 390 (Tex. App.—El Paso 2000, pet. denied) ..................................................................................................28

*Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976) ..............................................14, 32

*Hollick v. Smith*, 685 S.W.2d 18 (Tex. 1985)..................................................13, 14

*In Interest of G.M.*, 596 S.W.2d 846 (Tex. 1980)....................................................14

*In re A.H.L., III*, 214 S.W.3d 45 (Tex. App.—El Paso 2006, pet. denied).............19

*In re B.A.C.*, 4 S.W.3d 322 (Tex. App.—Houston [1st Dist.] 1999, pet. dism'd) ..18

*In re C.D.E.*, 391 S.W.3d 287 (Tex. App.—Fort Worth 2012, no pet.) .................25

*In re C.E.K.*, 214 S.W.3d 492 (Tex. App.—Dallas 2006, no pet.) ........................27

*In re C.H.*, 89 S.W.3d 17 (Tex. 2002) ...................................................................14

*In re D.M.D.*, 363 S.W.3d 916 (Tex. App.—Houston [14th Dist.] 2012, no pet.) . 13

*In re D.T.*, 34 S.W.3d 625 (Tex. App.—Fort Worth 2000, pet. denied).................28

*In re E.A.F.*, 424 S.W.3d 742 (Tex. App.—Houston [14th Dist.] 2014, pet. denied Feb. 27, 2015) ........................................................................................ 19, 20

*In re E.C.R.*, 402 S.W.3d 239 (Tex. 2013) .......................................................... 15

*In re J.F.C.*, 96 S.W.3d 256 (Tex. 2002) ...................................................... 14, 15

*In re J.M.*, 361 S.W.3d 734 (Tex. App.—Amarillo 2012, no pet.)........................ 17

*In re J.R.*, 171 S.W.3d 558 (Tex. App.—Houston [14th Dist.] 2005, no pet.)....... 28

*In re K.C.A.*, 36 S.W.3d 501 (Tex. 2000) ........................................................... 18

*In re K.M.L.*, 443 S.W.3d 101 (Tex. 2014)..................................................... 13, 17

*In re M.A.N.M.*, 75 S.W.3d 73 (Tex. App.—San Antonio 2002, no pet.) .............. 33

*In re M.C.*, 917 S.W.2d 268 (Tex. 1996) ....................................................... 25, 27

*In re M.M.F.*, No. 2-08-014-CV, 2008 WL 5265033 (Tex. App.—Fort Worth 2008, no pet.) (mem. op.).................................................................................. 28

*In re M.S.*, 115 S.W.3d 534 (Tex. 2003)............................................................. 19

*In re N.H.*, 122 S.W.3d 391 (Tex. App.—Texarkana 2003, pet. denied) ............... 25

*In re N.R.*, 101 S.W.3d 771 (Tex. App.—Texarkana 2003, no pet.) ...................... 26

*In re P.E.W.*, 105 S.W.3d 771 (Tex. App.—Amarillo 2003, no pet.)...................... 28

*In re Rodriguez*, 940 S.W.2d 265 (Tex. App.—San Antonio 1997, writ denied) .. 37

*In re S.A.P.*, 169 S.W.3d 685 (Tex. App.—Waco 2005, no pet.) .......................... 30

*In the Interest of J.A.J.*, 243 S.W.3d 611 (Tex. 2007) ........................................ 36

*Lewelling v. Lewelling*, 796 S.W.2d 164 (Tex. 1990) .............................................. 32

*Lide v. Lide*, 116 S.W.3d 147 (Tex. App.—El Paso 2003, no pet.) ......................... 37

*S.H.R. v. Dep't of Family and Protective Servs.*, No 01-10-00999-CV, 2012 WL 1441397 (Tex. App.—Houston [1st Dist.] Apr. 20, 2012, *judgment set aside, not vacated* Jun. 14, 2012) ................................................................................. 16

*S.H.R. v. Dep't of Family and Protective Servs.*, No. 01-10-00999-CV, 2012 WL 1441398 (Tex. App.—Houston [1st Dist.] Apr. 20, 2012, *rehearing granted but opinion not vacated*, Jun. 14, 2012) ..................................................................... 14

*Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed. 2d 599 (1982) ........ 13

*Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531 (Tex. 1987) ..................... 28

*Ybarra v. Texas Dep't of Human Servs.*, 869 S.W.2d 574 (Tex. App.—Corpus Christi 1993, no writ) ................................................................................... 32

**Statutes**

Act eff. Sept. 1, 2013, 83rd Leg., R.S., ch. 810, § 9, 2013 Tex. Gen. Laws 2026, 2029 ............................................................................................................ 16

Tex. Fam. Code § 101.007 ...................................................................................... 13

Tex. Fam. Code § 107.013 ...................................................................................... 20

Tex. Fam. Code § 107.013(d) .................................................................................. 16

Tex. Fam. Code § 107.013(e) .................................................................................. 17

Tex. Fam. Code § 153.131(a) ...................................................................35

Tex. Fam. Code § 161.001 ...............................................................13, 15

Tex. Fam. Code § 161.001(1) ..................................................................13

Tex. Fam. Code § 161.001(1)(D)...............................................................24

Tex. Fam. Code § 161.001(1)(E) ..........................................................26, 27

Tex. Fam. Code § 161.001(1)(O)...............................................................28

Tex. Fam. Code § 161.001(2) ..................................................................13

**Rules**

Tex. R. App. P. 20.1(a)(3) ......................................................................18

Tex. R. App. P. 20.1(e) .........................................................................18

Tex. R. App. P. 20.1(e)(2) ......................................................................18

Tex. R. App. P. 20.1(g)(2) ......................................................................18

Tex. R. App. P. 20.1(i)(2) .......................................................................18

Tex. R. App. P. 20.1(i)(4) .......................................................................18

Tex. R. App. P. 20.1(l)...........................................................................17

Tex. R. App. P. 44.1.........................................................................24, 39

Tex. R. Civ. P. 145(b) ...........................................................................17

Tex. R. Civ. P. 145(d) ...........................................................................19

## STATEMENT OF THE CASE

*Nature of the case:* This appeal arises from a suit for termination of the parent-child relationship filed by a governmental entity.

*Course of Proceedings:* After trial had commenced, the trial court released indigent mother's attorney ad litem. (RR 9) After a bench trial, the trial court terminated mother's rights and named DFPS permanent managing conservator of the oldest and youngest child. (CR 1033-1096). The trial court established the parent-child relationship between the middle child and his alleged father and awarded the father managing conservatorship over that child. (CR 1033-1096). Mother filed a motion for new trial, which was denied. (CR 1050). Mother requested for the appointment of appellate counsel, which was also denied. (CR 1058, CR Supp. 27). The trial court then signed an order sustaining a contest to indigence, stating that any prior orders finding mother indigent were "void." (CR Supp. 47).

*Trial court disposition:* The trial court rendered judgment on October 17, 2014. (CR 1033).

## STATEMENT ON ORAL ARGUMENT

Appellant, D.K., respectfully requests the opportunity to present oral argument. Oral argument would significantly aid the Court in deciding this case by providing additional explanation of the facts and issues presented. *See* Tex. R. App. P. 39.1(c).

# ISSUES PRESENTED FOR REVIEW

**Issue 1:**      **Whether counsel was improperly dismissed in violation of a statutory requirement for an ad litem attorney.**

**Issue 2:**      **Whether the trial court erred by failing to appoint another attorney for Appellant after he promised to do so and she requested that he do so.**

**Issue 3:**      **Whether the trial court erred by granting the contest to affidavit of indigence.**

**Issue 4:**      **Whether there was sufficient evidence to support termination under Tex. Fam. Code § 161.001(1)(D).**

**Issue 5:**      **Whether there was sufficient evidence to support termination under Tex. Fam. Code § 161.001(1)(E).**

**Issue 6:**      **Whether there was sufficient evidence to support termination under Tex. Fam. Code § 161.001(1)(O).**

**Issue 7:**      **Whether there was sufficient evidence to support the finding that termination was in the children's best interest.**

**Issue 8:**      **Whether there was sufficient evidence to support the naming of the Department as permanent managing conservator of R.R.H. and M.K.**

**Issue 9:**      **Whether there was sufficient evidence to support the naming of Michael Jones as permanent managing conservator of M.D.J.**

Appellant, D.K., submits the following Appellant's Brief. D.K. seeks relief from an order terminating her parental rights. In support, Appellant offers as follows:

## STATEMENT OF FACTS

### A. Factual background

Appellant, D.K., is the mother of the children the subject of this suit: R.R.H. (age 13 at time of trial), M.D.J. (age 9 at the time of trial), and M.K. (age 3 at the time of trial). (CR 33). Until 2011, D.K. lived and raised her children in her parents' home. (RR 131). When both of her parents died unexpectedly in 2011, D.K. became depressed and began using drugs. (RR 131-32).

In 2012, the Office of the Attorney General conducted a child support review regarding M.D.J. (CR 62). That case was pending in the 246th Judicial District Court in cause number 2012-67745.

By January 2013, D.K. was in dire financial circumstances. She was searching for work and moving between hotels and the homes of family or friends. (RR 72). She had a few outstanding warrants for minor offenses. On January 27, 2013, realizing that she would be required to appear at court to sit out her warrants in the coming days, D.K. called a friend who had helped her out with her children in the past, Trenese Myers. (RR 36-44). Myers was D.K.'s oldest son's teacher. *Id.*

1

She was the person D.K. felt was best able to take good care of her children over the 45 days that she expected to be in jail. *Id.*

On January 27, 2013, Myers met D.K. in a parking lot in Katy to exchange possession of the children. (RR 38). At the parking lot, Myers told D.K. that although she would take the two older boys, she could not care for the baby because she and her husband worked during the day; but Myers brought her friend, Alexis Caesar-White who said that she could and would be willing to care for the baby. (CR 392). D.K. executed documents necessary for Myers to make decisions for the children while she was in jail. (RR Exh. 1). The record reflects that Alexis notarized the statement of guardianship. *Id.*

On January 29, 2013, a referral was made to CPS alleging that D.K. had left her children with strangers. (CR 392). The Department visited D.K. in jail, who explained she had only left them with Myers temporarily while she sat out her warrants. (Id.).

Just days later, on February 4, 2013, the Department filed an Intervention for Protection of a Child for Conservatorship, and for Termination in Suit Affecting Parent-Child Relationship. (CR 166). That same day, the trial court found D.K. to be indigent and appointed Ricardo Ramos as attorney ad litem to represent her. (CR 69). The dismissal date was set for February 10, 2014. (CR 72).

On March 14, 2013, the court signed a family service plans. (CR 10).

On October 22, 2013, the trial court signed an order transferring the case to Brazoria County, where this case was ultimately tried. (CR 88).

On November 21, 2013, Ramos filed a motion to withdraw as counsel for D.K. citing as the reason for withdrawal that the case had been transferred to Brazoria County. (CR 218).

On December 12, 2013, D.K. appeared in the Brazoria County trial court and signed a statement indicating her continued inability to pay costs and requesting counsel. (CR 226). Finding her indigent, the trial court granted D.K's request for counsel and appointed Toni Hays Kersey as attorney ad litem. (CR 226).

On January 9, 2014, the trial court signed an order retaining the case on the docket. The dismissal date was moved back to August 11, 2014. (CR 237).

On June 4, 2014, the Department filed a second amended petition for termination. (CR 379).

On July 16, 2014, the parties attended mediation, which was unsuccessful. (CR 452).

On July 17, 2014, a docket entry indicates that the case was called to trial and witnesses were sworn. The case was then extended to September 29, 2014. (CR 1090).

On August 18, 2014, the Department filed a Third Amended Petition for Protection of a Child. (CR 454). No motion for leave to file this amendment appears in the record.

Between August 22, 2014 and September 9, 2014, multiple business records affidavits were filed. (CR 486, 578, 704, 713, 719, 729). No objections were made to the fact that these business records affidavits were filed well after trial had commenced.

**B. Trial court releases D.K.'s attorney ad litem after trial has already commenced**

On September 29, 2014, the case was called again. (CR 1093). A docket entry notes that the case was estimated to last for three days. (CR 1093). The trial court asked D.K.'s attorney if she wanted to put something on the record. (RR 9). The following exchange occurred:

> THE COURT: Okay. All right. Ms. Kersey, you informed the Court of a matter that you need to put on the record.
>
> MS. KERSEY: Yes, sir.
>
> THE COURT: I'm going to let you do that, and then I'll follow up with some questions.
>
> MS. KERSEY: I'd call my client, [D.K.], to the stand.
>
> THE COURT: Ms. [D.K.], if you'll just come right up in front of the Bench, please.
>
> MS. KERSEY: Do you want me to come up there?

4

THE COURT: Yes, please.

MS. KERSEY: As I informed the Court, Your Honor, my client, Ms. [D.K.], has decided she would like to represent herself. She feels that she is the only one that can best put forth her case to you. I have advised her on numerous occasions of settlement offers that were, in my professional opinion, in her best interest; and she has declined those. She has insisted on going forward with the trial on her behalf, representing herself.

(RR 9).

The trail judge then took D.K. on voir dire and asked her about her education level and whether she understood the risks of letting her attorney off the case. (RR 10). The trial court then promised to appoint another attorney for D.K. if she decided she wanted one during the trial:

THE COURT: Do you understand that you have the right to have an attorney appointed to represent you prior to any of these questions?

MS. [D.K.]: Yes, sir.

THE COURT: You have an attorney today --

MS. [D.K.]: Yes, sir.

THE COURT: -- that you want me to cut loose. Do you understand that if I cut Ms. Kersey loose and allow you to represent yourself, if you get to the point where you believe that there's an answer that might incriminate you, you can stop these proceedings and I'll appoint another attorney to come advise you with regard to that matter? I know Ms. Kersey. I know she's here on my criminal docket, as well as my family docket, so I know she knows criminal law. But I'll appoint another attorney. Do you understand that?

MS. [D.K.]: Yes, sir.

5

THE COURT: If you can't afford an attorney, I will appoint one; but if you can afford one, you'll need to hire one. Do you understand that?

MS. [D.K.]: Yes, sir.

THE COURT: Ms. Kersey is appointed to represent you in this case, correct --

MS. [D.K.]: Yes, sir.

THE COURT: -- as a result of my previous finding that you were indigent?

MS. [D.K.]: Yes, sir.

THE COURT: All right. Has anything changed with regard to your indigency status or financial status where you could hire an attorney?

MS. [D.K.]: No, sir.

THE COURT: All right. …

(RR 10).

The court then ruled that he would grant D.K.'s request that her attorney be released:

THE COURT: Ms. Kersey --

MS. KERSEY: Yes, Your Honor.

THE COURT: -- I will grant her request and release you.

(RR 23).

6

There was no statement or any finding that there was good cause for Kersey's release. Nor was a statement of good cause requested by Kersey. No written order granting Kersey's release appears in the record.

Mid-way through the trial, D.K. asked that her attorney be brought back. (RR 112). The trial court refused:

> THE COURT: All right. Ms. [D.K.], come on back up. I understand you had a question or something you want to ask me before we proceed.
>
> MS. [D.K.]: I wanted to see if I could get that lawyer.
>
> THE COURT: Ma'am?
>
> MS. [D.K.]: If I can get that lawyer back.
>
> THE COURT: You just let yours go.
>
> MS. [D.K.]: I know.
>
> THE COURT: I'm not bringing her back. We've already started.
>
> MS. [D.K.]: I know.
>
> THE COURT: That's why I went through all those questions with you.
>
> MS. [D.K.]: I know. We can just -- I guess I'm -- it's okay.
>
> THE COURT: Do you want to talk to these folks again and see where they're at?
>
> MS. [D.K.]: What do you mean?
>
> THE COURT: I don't know if there are any proposals out there, settlement offers or anything of that sort. I don't know. But if you want

7

to talk to them again, we can; and if you don't, we'll go ahead.

MS. [D.K.]: We can go ahead.

(RR 112-113).

**C. Evidence at trial**

Testimony was heard from only three witnesses regarding D.K.'s termination: D.K., Trisha West (a caseworker), and the guardian ad litem.

D.K. admitted at trial that she became addicted to methamphetamine and marijuana just before January 2013, when she turned her children over to Myers. (RR 50). She acknowledged that she tested positive for cocaine and meth in March of 2013, just after the Department's intervention. (RR 54). While the case was pending, D.K. relapsed and called her casework for help. (RR 58). On the day of trial, however, she had been clean for more than six months (since April 2014). (RR 34-35).

At the time D.K. asked Myers for help with the children, D.K. and the children had been living with her boyfriend at a Motel 6. (RR 38). She also had a history of unstable housing prior to living in the Motel 6. (RR 42). For example, she had tried living with her brother in Yorktown, but that did not work out because she did not end up getting the job she had moved there for. (RR 43).

8

D.K. admitted that it was probably a mistake to leave her children with Myers because, although she thought she could trust her, "[s]he called CPS and told them I abandoned my kids." (RR 36).

At the time of trial, D.K. was living at Perpetual Help Home, a Christian-based transitional home for women. (RR 66). She was employed as an intern at the Center for Peace in Victoria, Texas earning $500 per month. (RR 65). Evidence suggested that Perpetual Help Home does not permit children over the age of 13 to live there, but D.K. explained that a support group at the home had offered to help her find a place for the children to stay overnight if they were returned to her. (RR 66).

The affidavit does not indicate that the children suffered any harm with Myers or Caesar-White, or that they were in any way harmed when CPS was called in. (CR 392).

D.K. testified that at the time of trial she had completed her service plan. (RR 59). She did admit that she missed one urinalysis screening. (RR 67).

With regard to M.D.J., Michael Jones testified at trial that he was asking to be named the father of M.D.J. and for M.D.J. to be placed with him in his home. (RR 191). He testified that this was in the child's best interest. (RR 191). He also testified that he believed it was in the child's best interest for D.K.'s rights to him to be terminated. (RR 191). He also testified that he and his wife "intend to adopt"

9

him. (RR 192). The guardian ad litem stated that he had "every reason to believe that the father's family will take care of [M.D.J.]" but he offered no specifics. (RR 190). D.K. attempted to cross-examine Michael Jones but nearly all of her objections were sustained. (RR 192-197).

On October 17, 2014, the court signed a final order terminating D.K.'s parental rights to all three children. (CR 1033). The Department was named managing conservator of R.R.H. and M.K. (CR 1033). The trial court named Michael Jones the managing conservator of M.D.J. (CR 1033).

### D. Trial court retroactively nullifies all prior findings of indigence

On October 22, 2014, Blair Parker filed a notice of appearance on behalf of D.K. (CR Supp. 5). Parker indicated that she was hired by a "Good Samaritan" to represent D.K. (CR Supp. 15).

On October 28, 2014, Parker filed a notice of appeal and a motion for new trial on D.K.'s behalf. (CR 1048). The motion for new trial was denied on December 18, 2014.

On November 6, 2014, D.K. filed a request for court appointed attorney on appeal, together with an affidavit of indigency. (CR 1058). She also put the court reporter on notice that she was requesting the reporter's record on appeal. (CR Supp. 13).

10

On November 7, 2014, the court reporter filed a contest to indigence. (CR Supp. 20).

On November 10, 2014, the Department filed a response, arguing that D.K. was no longer indigent because she had hired Parker to represent her. (CR Supp. 22).

On November 13, 2014, D.K. filed an amended request for a court-appointed appellate counsel (CR Supp. 27) and an objection to the court reporter's contest based on the fact that it was not timely filed within 3 days of the day she filed her notice of appeal. (CR Supp. 32).

On Monday, November 17, 2014, the Department filed an answer to D.K.'s motion for new trial, arguing that there was no error in releasing Kersey because D.K. was warned by the trial judge. (CR Supp. 41).

On December 18, 2014, the trial court denied the new trial after a hearing. That same day, the trial court signed an Order Granting Contest to Affidavit of Indigence, which stated:

> "The original order of indigency is deemed a void order under Texas Family Code § 107.013 based on the fact that there is no affidavit of indigency of [D.K.] filed in the records of this cause. Therefore, the presumption of indigency of D.K. is improper and was never established."

(CR Supp. 47).

11

## SUMMARY OF THE ARGUMENT

In this case an indigent mother was deprived of the right to fundamental fairness that Texas law requires in suits to terminate parent-child relationships. Contrary to the Fourteenth Court's decision in *In re E.A.F.*, 424 S.W.3d 742 (Tex. App.—Houston [14th Dist.] 2014, pet. denied Feb. 27, 2015), the trial court allowed D.K. to release her attorney without a showing of good cause on the record.

When the trial court released D.K.'s attorney, it promised to stop the proceedings and get another one appointed for her if she felt like she needed one. When D.K. requested her attorney be brought back mid-trial, the trial judge refused. Trial itself was a train wreck for D.K. None of her evidence was admitted. All of her objections were overruled.

Having been determined indigent at the start of the case, D.K. was entitled to the presumption of indigence throughout the remainder of the case, including any appeals, unless the trial court found that her circumstances had changed. A contest was untimely filed by the court reporter. The trial court sustained the contest and then improperly ruled that indigence had never been established, essentially depriving her of the presumption of indigence to which she was entitled.

Even having been deprived of her counsel, evidence at trial was insufficient to support termination. The children were placed with the Department after D.K.

12

left them with a teacher she thought she could trust. The Department made much of the fact that D.K. was surrounded by people with criminal convictions, but there was no evidence that there was anything wrong with the teacher or that the children were abused or neglected. There also was no evidence that termination was in the children's best interest or that conservatorship should have been awarded to the Department.

## ARGUMENT

### I. Standard of Review in Termination Cases

Termination of parental rights, the total and irrevocable dissolution of the parent-child relationship, constitutes the "death penalty" of civil cases. *In re K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring). The natural right between parents and their children is one of constitutional dimensions. *Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 71 L.Ed. 2d 599 (1982); *see also Hollick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.M.D.*, 363 S.W.3d 916, 920 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The Texas Supreme Court has concluded that a parent's rights to her children are "essential," "a basic civil right of man," and "far more precious than any property rights." *Hollick*, 685 S.W.2d at 20. As such, termination proceedings are strictly scrutinized and the termination statutes are strictly construed in favor of the parent. *S.H.R. v. Dep't of Family and Protective Servs.*, No. 01-10-00999-CV, 2012 WL

13

1441398, at *18 (Tex. App.—Houston [1st Dist.] Apr. 20, 2012, *rehearing granted but opinion not vacated*, Jun. 14, 2012) (Jennings, J. concurring) (citing *Hollick*, 685 S.W.2d at 20).

A termination decree is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit. *Holick*, 685 S.W.2d at 20. Due process therefore requires the petitioner to justify termination by clear and convincing evidence. Tex. Fam. Code § 161.001; *In Interest of G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

"Clear and convincing evidence" means the measure or decree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. Tex. Fam. Code § 101.007; *In re J.F.C.*, 96 S.W.3d at 264; *In re C.H.*, 89 S.W.3d 17, 25-26 (Tex. 2002). A trial court may terminate parental rights only if the petitioner has shown by clear and convincing evidence that the parent has committed an act set forth in section 161.001(1) and that termination is in the best interest of the child. Tex. Fam. Code § 161.001(1), (2); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976).

The traditional no-evidence standard of review for legal sufficiency does not afford sufficient protection for the constitutionally protected parent-child relationship. *In re J.F.C.*, 96 S.W.3d at 265. When considering legal sufficiency of

14

the evidence to support termination, the reviewing court considers all evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *Id.* at 265-66. The reviewing court assumes that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so and disregards all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id.* Evidence of undisputed facts that do not support the finding must also be considered. *Id.* The reviewing court need not disregard all of the evidence that does not support the finding, as doing so could "skew the analysis of whether there is clear and convincing evidence." *Id.* If the reviewing court determines that no reasonable fact finder could form a firm belief or conviction to support the finding, then the evidence is legally insufficient, and rendition in favor of the parent is required. *Id*.

As in legal sufficiency review, the traditional factual sufficiency analysis does not afford sufficient protection for the constitutionally protected parent-child relationship. When reviewing factual sufficiency to support termination, the reviewing court must determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction that the state met both prongs of section 161.001. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). Evidence is factually insufficient to support termination if, in light of the entire record, the

15

disputed evidence that a reasonable fact finder could not have credited in favor of its finding is so significant that the fact finder could not reasonably have formed a firm belief or conviction. *Id.* This Court has held that it shocks the conscious for the Department "to suggest that a judgment can be factually sufficient based on evidence never discussed or argued to the fact finder." *S.H.R. v. Dep't of Family and Protective Servs.*, No 01-10-00999-CV, 2012 WL 1441397, at *17 (Tex. App.—Houston [1st Dist.] Apr. 20, 2012, *judgment set aside, not vacated* Jun. 14, 2012).

In this case, the evidence was legally and factually insufficient to support the trial court's finding that D.K. had violated sections 161.001(1)(D), (E), (O) and that termination was in the child's best interest. Each issue will be taken in turn.

## II.   Issues 1-3: Denial of counsel and nullified presumption of indigence

The trial court reversibly erred when it released D.K.'s attorney after trial had already begun and when it failed to appoint additional counsel for D.K. when she requested it. The trial court also reversibly erred when it nullified prior findings of indigence and denied her the presumption of indigence to which she was rightly entitled.

16

**A. Issue 1: The trial court reversibly erred when it released D.K.'s attorney ad litem in the middle of trial.**

      *i.    Applicable law*

In a suit filed by a governmental entity to terminate the parent-child relationship, the trial court shall appoint an attorney ad litem to represent the interest of an indigent parent who responds in opposition to the termination. Tex. Fam. Code § 107.013.[1] A parent claiming indigence must file an affidavit of indigence in accordance with Rule 145(b) of the Texas Rules of Civil Procedure before the trial court can conduct a hearing on indigence. Tex. Fam. Code § 107.013(d); Tex. R. Civ. P. 145(b). A trial court errs if it fails to appoint counsel for an indigent parent even if the parent does not request an attorney. *In re J.M.*, 361 S.W.3d 734, 736 (Tex. App.—Amarillo 2012, no pet.). If a parent has some assets or income she can still prove that she is partially indigent. Tex. R. App. P. 20.1(l). A parent can be found to be partially indigent.

A parent who the court has determined is indigent is presumed to remain indigent for the duration of the suit, including any appeals. Tex. Fam. Code

---

[1] The Legislature enacted changes to the statute in 2013, which strengthened indigent parents' right to counsel. *See e.g.*, Act eff. Sept. 1, 2013, 83rd Leg., R.S., ch. 810, § 9, 2013 Tex. Gen. Laws 2026, 2029 (codified at Tex. Fam. Code § 262.201(a-1)-(a-3); *but see K.M.L.*, 443 S.W.3d at 123 (Lehrmann, J., concurring) ("even before it was amended to do so expressly," the Texas Family Code required admonishments about the right to counsel and additional time for appointed counsel to prepare for the full adversary hearing upon a showing of good cause).

17

§ 107.013(e). Upon a motion by the parent, the attorney ad litem for the parent, or the attorney representing the governmental entity, the trial court can determine that the parent is no longer indigent due to a material and substantial change in the parent's financial circumstances. Tex. Fam. Code § 107.013(e).

When an indigent parent files a notice of appeal, a court reporter, clerk, or any party to the suit may file a contest to a presumption of indigence that has been established under Tex. R. App. P. 20.1(a)(3). Tex. R. App. P. 20.1(e). *In re K.C.A.,* 36 S.W.3d 501, 503 (Tex. 2000) (regarding 20.1); *In re B.A.C.,* 4 S.W.3d 322, 323 (Tex. App.—Houston [1st Dist.] 1999, pet. dism'd). A contest to a presumption of indigence must be filed within three days after the notice of appeal is filed. Tex. R. App. P. 20.1(e)(2). Trial court must have a hearing and rule on the contest within ten days of the date that the contest was filed. Tex. R. App. P. 20.1(i)(2); Tex. R. App. P. 20.1(i)(4).

A contest must contain specific facts demonstrating a good faith belief that the parent is no longer indigent due to a material and substantial change in the parent's financial circumstances. Tex. R. App. P. 20.1(e)(2). The person filing the contest has the burden of proof to contest the presumption of indigence. Tex. R. App. P. 20.1(g)(2). The person contesting the affidavit must prove that the parent is no longer indigent due to a material and substantial change in the parent's financial circumstances since the most recent finding of indigence. *Id.* A party who is

18

indigent for purposes of appeal does not need to prove that friends or relatives are unable to pay for the appeal. *Allred v. Lowry*, 597 S.W.2d 353, 355 (Tex. 1980).

The order sustaining the contest must be in writing. *B.J.M. v. State*, 997 S.W.2d 626, 627 (Tex. App. Dallas 1998, no pet). If the trial court finds that a party can pay costs, the court must state reasons in the order. Tex. R. Civ. P. 145(d).

The statutory right to counsel in parental termination cases embodies the right to effective assistance. *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003). Absent a finding of good cause, the trial court is not authorized to relieve an indigent parent's attorney ad litem of his duties. *In re E.A.F.*, 424 S.W.3d 742, 748-49 (Tex. App.—Houston [14th Dist.] 2014, pet. denied Feb. 27, 2015); *See also In re A.H.L., III*, 214 S.W.3d 45, 52 (Tex. App.—El Paso 2006, pet. denied) (finding that due process does not require the right to self-representation in a termination case and upholding trial court's prohibition against father from proceeding without an appointed attorney ad litem).

In *E.A.F.*, an indigent father appeared at trial and informed the trial court that he wanted to represent himself. *E.A.F.*, 424 S.W.3d at 745-46. The attorney ad litem for the father stated that he was "ready to proceed" and he believed his client had "a legitimate case" *Id.* The trial court questioned the father on the issue:

The Court: Okay. So you don't want a lawyer?

19

[Appellant]: I want to represent myself.

The Court: Okay. Well you can do that. All right. You're released.

Mr. Shelton: Thank you.

*E.A.F.*, 424 S.W.3d at 748. Shelton had not filed a motion for withdrawal. The trial court did not sign an order granting the withdrawal. *Id.*

The Fourteenth Court of Appeals found that the trial court erred by allowing appellant to release his court appointed attorney without a showing of good cause rendered on the record. *E.A.F.*, at 748-49. The Court in *E.A.F.* nevertheless affirmed the trial court's ruling because the appellant had not raised a point of error about granting the withdrawal or the failure to appoint other counsel. Rather, he had only complained that he wasn't given *Faretta*-type warnings. The court found that *Faretta* warnings regarding the dangers of releasing his attorney because the appellant did not even have the right to release his attorney.

### ii. Application of law to facts

This case is on point with *E.A.F.*, and D.K. asks this Court to follow its sister court in its ruling by finding that the trial court reversibly erred by allowing Kersey to withdraw without a finding of good cause on the record. The record here indicates no reason for Kersey's withdraw other than Kersey's statement that she had recommended settlement to D.K. and D.K. had refused to settle. The trial court was not authorized to grant D.K.'s "request" that her attorney be released. Nor was

20

D.K. authorized to release her attorney. Kersey's duties to her client under Tex. Fam. Code § 107.013 should have continued.

Moreover, it was fundamentally unfair to release the attorney in the middle of trial. Trial was "commenced" on July 17, 2014.[2] This came back to bite D.K. mid-trial when she was being questioned about the stability of her housing. (RR 127). The safety plan indicated that she was supposed to maintain stable housing for 6 months. At the time trial resumed in September, D.K. had been in the same transitional home for at least 6 months, but the children's attorney ad litem attempted to argue that she had not met this requirement because she had not been living there for 6 months as of the date trial commenced, July 17, 2014. (RR 127). The Department will likely attempt to use the trial "commencement" date as both a sword and a shield: on the one hand, they will argue that D.K. was given warnings prior to evidence being introduced, but they will attempt to limit the evidence of D.K.'s recovery and actions between July 17, 2014 and September 29, 2014 to argue that her rights should be terminated.

The Department will likely point out that the trial court warned D.K. about the risk involved in releasing her attorney. Indeed, this was the only reasoning

---

[2] This is a procedural slight-of-hand commonly used to avoid the mandatory dismissal deadlines for termination suits under Tex. Fam. Code § 263.401.

behind the Department's response to D.K.'s motion for new trial. Under *E.A.F.*, warnings were arguably not implicated in this case because D.K. was not authorized to represent herself, anyway.

## B. Issue 2: The trial court should have appointed new counsel for D.K. when she requested a lawyer mid-trial.

The trial court promised D.K. that he would stop the trial and appoint a new lawyer for her if she asked for one. D.K. tried to invoke this promise when she asked for her lawyer back. The trial court flatly refused, but did say she was permitted to talk to the Department further about settlement. Having promised to get her an attorney if she asked for one later, the trial court erred by refusing the request.

## C. Issue 3: The trial court erred by granting the untimely contest to the affidavit

The trial court erred by granting the contest to the affidavit because it was not timely filed.  The notice of appeal was filed on October 28, 2014. (CR 1048). The court reporter did not file her contest until November 7, 2014. (Supp. 20). Moreover, the contest did not contain required specifics about a good faith belief that D.K.'s circumstances had materially and substantially changed.

The order granting the contest was further error because it improperly nullified the presumption of indigence to which D.K. was entitled. It also does not contain the required finding that a material and substantial change in circumstances

22

had occurred since the last finding of indigence. Rather, it simply nullifies prior indigence findings. There is no authority for a court to nullify a presumption. The statutory scheme permits certain persons to challenge the continuing presumption by showing that a parent is no longer indigent; but there is no authority for the presumption to be nullified. In this case, the error is even more egregious because the order sustaining the contest does not even state that D.K. is not currently indigent. Rather, it states that the prior findings are void because of a lack of affidavit. Although an affidavit is required to trigger the hearing under 107.013, there is no authority to support the suggestion that a lack of affidavit will void the presumption. In this case, there were at least two findings of indigence. First, on February 4, 2012, the day the case was filed, the Harris County District Court found D.K. to be indigent and appointed Ricardo Ramos to represent her. That finding, on its own, created a presumption that D.K. remained indigent throughout the proceeding, including any appeals. Then, on December 12, 2012, D.K. was found indigent by the Brazoria County trial court and another attorney was represented. That finding, too, afforded D.K. a presumption of indigence throughout the rest of trial and any appeal.

### D. Appellant was harmed by the error

The total deprivation of counsel at trial is a structural error, which infects the trial from beginning to end. *Davis v. State*, 228 S.W.3d 917, 920 (Tex. App.—

23

Waco 2007, no pet.). Even if this Court finds that this error is subject to a harm analysis, it is clear that the denial of counsel was harmful to D.K. *Id.* None of D.K.'s objections were sustained throughout trial, and most of her testimony was kept out. There was no objection made to the late-filed business records affidavit. D.K. asked for a lawyer when she was asked incriminating questions but the trial court denied her counsel. Because of the denial of counsel, D.K. was deprived of important opportunities which she would have otherwise had as of right, including the ability to preserve error for appropriate appellate review. *Id.* Tex. R. App. P. 44.1.

III. **Issue 4: The evidence at trial was legally and factually insufficient to support termination under 161.001(1)—that D.K. knowingly allowed the child to remain in dangerous conditions or surroundings.**

**A. Applicable law**

Under section 161.001(1)(D), the trial court may order termination of the parent-child relationship if it is in the best interest of the child and the court finds by clear and convincing evidence that the parent has –

> "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child"

Tex. Fam. Code § 161.001(1)(D).

The court must find that the parent acted knowingly. *Id.* To determine that the parent acted "knowingly," the court must find that the parent was aware of the

24

potential danger to the child and disregarded the risk. *In re C.D.E.*, 391 S.W.3d 287, 297 (Tex. App.—Fort Worth 2012, no pet.).

The court must find that the parent knowingly placed or allowed the child to remain in the dangerous condition. "Endangerment" means to expose the child to loss or injury or to jeopardize the child's physical or emotional well-being. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996). The environment must pose a real threat of injury or harm to the child. *In re N.H.*, 122 S.W.3d 391, 402 (Tex. App.— Texarkana 2003, pet. denied).

## B. Application of law to facts

In this case, the children were placed with the Department after Myers called CPS to report that D.K. had left her children with her. There is no evidence that the children were at risk at Myers or Caesar-White's house. The court must find that the danger was caused by the conditions or surroundings. That was not the case here. There must be a direct causal connection between the environment where the child is placed or allowed to remain and the danger to the child's physical or emotional wellbeing. The environment itself must cause the danger, not the parent's conduct. *In re N.R.*, 101 S.W.3d 771, 775 (Tex. App.—Texarkana 2003, no pet.).

D.K. took affirmative actions to *avoid* risk to the children by placing them with a schoolteacher who she knew and could trust. As it turns out, the school

25

teacher was only a risk to the children insofar as she ushered them into the foster care system. There was no evidence that D.K. knew that this would be the result of leaving the children with Myers. The Department made much of the fact that the children were at times allowed to remain in the care of D.K.'s boyfriend at some point before she gave the children to Myers, but D.K. affirmatively chose NOT to leave them with her boyfriend when she knew that she would be in jail for 45 days. She took them to the only person in her life at that time, who she thought she could trust. Again, there is no evidence that the children were in danger with the teacher or with Alexis. D.K. had had the children stay with Myers before and there were no problems.

The Department also made much of the fact that some of D.K.'s family members had convictions or were serving out time in jail. What went overlooked by the judge is the fact that D.K. did not try to give her children to any of those people when she turned herself into jail to serve out her warrant. Rather, she chose people who she thought she could trust. The affidavit in support of termination itself indicates that when they received a referral and notice that D.K. had dropped her children off with Myers and Caesar-White and CPS went to talk to them, they determined that the children should remain at Myers and Caesar-White's homes for the time being. Clearly, there was no danger to the children caused by D.K. The affidavit also indicates that although Myers guessed that D.K. had been living out

26

of her car, the children denied that was the case. The affidavit also confirms that the children had stayed with Myers before and that she was well known to them.

## IV. Issue 5: The evidence at trial was legally and factually insufficient to support termination under 161.001(1)—that D.K. engaged in a continuing course of conduct that endangered the child

### A. Applicable law

Under section 161.001(1)(E), the trial court may order termination of the parent child relationship if it is in the best interest of the child and the court finds by clear and convincing evidence that the parent has –

> "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child."

Tex. Fam. Code § 161.001(1)(E).

The relevant time frame for the court to consider is before the child is removed from the parent. *In re C.E.K.*, 214 S.W.3d 492, 496-97 (Tex. App.—Dallas 2006, no pet.). "Endangerment" means more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (citing *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). The cause of the danger must be the parent's conduct alone, whether by action or inaction. *Doyle v. Texas Dep't of Protective and Reg. Servs.*, 16 S.W.3d 390, 395 (Tex. App.—El Paso 2000, pet. denied). The parent must have knowledge of the conduct that endangers the child. Tex. Fam.

27

Code § 161.001(1)(E). The endangerment allegation must be based on more than a single act or omission. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). "A voluntary, deliberate, and conscious **course of conduct** by the parent is required." *In re M.M.F.*, No. 2-08-014-CV, 2008 WL 5265033, at *9 (Tex. App.—Fort Worth 2008, no pet.) (mem. op.). For example, **continually** unsanitary living conditions have supported termination under subsection (E). *See In re P.E.W.*, 105 S.W.3d 771, 777 (Tex. App.—Amarillo 2003, no pet.). But termination cannot be based solely on failure to maintain stable housing. *See In re J.R.*, 171 S.W.3d 558, 578 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

### B. Application of law to facts

There is no evidence that D.K. engaged in a course of conduct that endangered the children. Rather, the evidence is clear that D.K. took affirmative steps to protect the children by taking them to a person she could trust for them to remain safely and someone who would be able to take them to school.

Although there was some evidence presented that D.K. used drugs, there was no evidence that she ever used drugs around her children. And although there was some evidence that her boyfriend had used drugs, there was no evidence that he used drugs around the children. Regardless, D.K. did not leave her children with her boyfriend when she went to sit out her warrants. Nor did she leave them with

28

her brothers. There is not enough evidence to rise to the level of clear and convincing evidence that D.K. endangered her children.

## V.   Issue 6: The evidence at trial was legally and factually insufficient to support termination under § 161.001(1)(O)—failure to comply with a family service plan when child is taken as a result of abuse or neglect of that child.

### A. Applicable law

Under section 161.001(1)(O), the trial court may order termination of the parent child relationship if it is in the best interest of the child and the court finds by clear and convincing evidence that the parent has –

> "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child."

Tex. Fam. Code § 161.001(1)(O). There are four distinct elements to this ground for termination: (1) that the child has been in custody of the Department for at least 9 months; (2) that there was a specific court order enumerating actions necessary to obtain the return of the child; (3) that the parent failed to complete those actions; and (4) that the child was removed from the parent because of abuse or neglect of the child. *Id.* There is no dispute that the child was in the custody of the Department for more than 9 months.

29

There is no evidence that the children were removed from D.K. because of abuse or neglect. To begin with, the children were not removed from D.K. at all. Rather, D.K. took her children to Myers, a person known to the children, and Myers schoolteacher recommended that the baby go with Caesar-White. There is no evidence that these women were unwilling to care for the children. Moreover, the evidence is clear that the children were not at any risk when they were found with Myers and Caesar-White. There is no evidence that the children had been abused or neglected by D.K. or by Myers or Caesar-White. Although there was evidence that the children may have had cavities, this is not sufficient evidence of abuse or neglect.

The question whether a child was removed from a parent as a result of abuse or neglect by that parent should be determined on a case-by-case basis. Even if this case determines that the children were at risk when D.K. gave them to Myers and Caesar-White, risk to a child is not the same as abuse or neglect of a child, and it cannot support termination under subsection (O). *In re S.A.P.*, 169 S.W.3d 685, 705-06 (Tex. App.—Waco 2005, no pet.).

Examining all of the evidence in the light most favorable to the trial court's judgment and disregarding all evidence the fact finder could have reasonably disbelieved or found incredible, a reasonable fact finder could not have formed a firm belief or conviction that the children were removed from D.K. as a result of

30

D.K.'s abuse or neglect of any of her children. As such, the evidence is legally and factually insufficient to support termination of D.K.'s rights under subsection (O).

**B. There is legally and factually insufficient evidence that D.K. failed to comply with that family service plan.**

In this case, the Department alleged that D.K. had failed comply with her Family Service Plan. The Department failed to meet its burden to prove these allegations by clear and convincing evidence.

Because the evidence at trial was legally and factually insufficient to support termination under section 161.001(1)(O), the trial court's judgment should be reversed and rendered in favor of Appellant or in the alternative the case should be remanded for a new trial.

**VI. <u>Issue 7: The evidence at trial was legally and factually insufficient to support a finding that termination was in the children's best interest.</u>**

**A. Applicable law**

There is a presumption that it is in the best interest of the child to have a natural parent as managing conservator In addition to establishing one of the statutory grounds for termination enumerated in section 161.001(1), the petitioner must also prove that termination of the parent child relationship is in the best interest of the child. Tex. Fam. Code § 161.001(2). Proof of one will not relieve the petitioner from the burden of proving the other. *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). The best interest of the child must be proven by clear and

31

convincing evidence. Tex. Fam. Code § 161.001(2); *Ybarra v. Texas Dep't of Human Servs.*, 869 S.W.2d 574, 579-80 (Tex. App.—Corpus Christi 1993, no writ).

"The presumption that the best interest of a child is served by awarding custody to a natural parent is deeply embedded in Texas law." *Lewelling v. Lewelling*, 796 S.W.2d 164, 166 (Tex. 1990). This presumption places a heavy burden on a non-parent seeking custody. *Id.* at 167. Termination cannot be justified where the evidence shows that the parent's failure to provide a more desirable environment for a child is due solely to misfortune and not to indifference or malice. *Clark v. Dearen*, 715 S.W.2d 364, 367 (Tex. App.—Houston [1st Dist.] 1987, no writ).

A list of factors for the trial court to consider in determining a child's best interest is set out by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d at 371-72:

1. The child's desires;

2. The child's emotional and physical needs, now and in the future;

3. The emotional and physical danger to the child, now and in the future;

4. The parental abilities of the individuals seeking custody;

5. The programs available to assist these individuals in promoting the child's best interests;

6. The plans for the child by the individual or agency seeking custody;

7. The stability of the home or proposed placement;

8. The parent's acts or omissions which may indicate the existing parent-child relationship is not a proper one; and

9. Any excuse for the parent's acts or omissions.

*Id.* The *Holley* factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). While undisputed evidence of one factor may be sufficient to support a best interest finding in a particular case, the presence of scant evidence relevant to each *Holley* factor will not support a best interest finding. *Id.* "[T]he best interest standard does not permit termination merely because a child might be better off living elsewhere." *In re M.A.N.M.*, 75 S.W.3d 73, 79 (Tex. App.—San Antonio 2002, no pet.).

**B. Application of the *Holley* factors and parental presumption to the case at hand**

Using the proper standard of review, the evidence must be viewed in the light most favorable to the verdict and also must include any undisputed evidence that does not support the verdict. *In re J.F.C*, 96 S.W.3d at 266. Under this framework, the *Holley* analysis is as follows:

The children did not speak with the judge or testify at court. The only evidence of the child's desires regarding placement was the guardian ad litem's unsubstantiated statements that the children were generally "afraid" to go back to

their mother. (RR 190). Most of D.K.'s testimony was objected to and none of her documents regarding best interest were admitted. This is insufficient evidence of the children's desires.

There was no evidence that the children had any particular physical needs. With regard to the child's emotional needs, the evidence showed that the Department had medicated two of the children for depression. There was no evidence that D.K. was unable or unwilling to address those issues. In fact, she had admitted and was in the process of addressing her own issues with depression, indicating that she would be willing and able to assist her children with any issues as well.

There was no evidence of immediate emotional or physical danger to the child at the time of trial.

D.K. attempted to testify about all the work she had done to try to get her children back and to improve her parenting skills. Most of the objections to her testimony were sustained, and she was not able to get any of her evidence admitted.

Once reunified with her children, D.K. had the support of other women in her shelter.

Although the guardian ad litem indicated that the foster homes were interested in adopting, there was no evidence at trial that they had made any

34

official request to do so. A reasonable fact finder would have to conclude that termination would leave the children's permanency plans uncertain at best.

D.K. testified that she was working on getting more stable for the sake of her children. Although there was testimony from the guardian ad litem that the foster homes were meeting the children's needs, there was no clear evidence that the foster home would ever become permanent.

D.K. was prevented from offering testimony to support the children's best interest because her counsel was released in the middle of trial. Because she was without counsel to protect her, it offends traditional notions of fair play and substantial justice to terminate rights under such circumstances.

The *Holley* factors must be applied to the evidence at hand in the light most favorable to the verdict as well as any undisputed evidence that does not support the verdict. Based on the foregoing, no reasonable fact finder could form a firm belief or conviction from the evidence in this case that termination of Appellant's parental rights was in the children's best interest.

Because the evidence at trial was legally and factually insufficient to support a finding that termination was in the best interest of the children, the trial court's judgment should be reversed and rendered in favor of Appellant or in the alternative the case should be remanded for a new trial.

**VII.** **Issue 8: If this Court finds that the judgment terminating Appellant's parental rights should be reversed, whether the appointment of the Department as the sole managing conservator of the R.R.H. and M.K. should also be reversed.**

If this Court finds that the termination judgment must be reversed, D.K. requests that the appointment of the Department as the child's sole managing conservator also be reversed. *See In the Interest of J.A.J*, 243 S.W.3d 611 (Tex. 2007). The trial court made findings under Tex. Fam. Code § 153.131(a) that the appointment of a parent as conservator of the child would significantly impair the child's physical health or emotional development and that appointment of the Department as sole managing conservator was in the child's best interest. As such, the appointment of the Department as a sole managing conservator must be contained in a separate challenge in this appeal. *J.A.J.*, 243 S.W.3d at 613.

There is a presumption that the best interest of the child is served by appointing a parent as managing conservator. Tex. Fam. Code. § 153.131(a). To rebut the parental presumption, a nonparent seeking conservatorship must present evidence that the appointment of the parent would significantly impair the child's physical health or emotional development. *Id.* Once evidence rebutting the parental presumption is offered, the presumption disappears and is not weighed or treated as evidence. *Lide v. Lide*, 116 S.W.3d 147, 152 (Tex. App.—El Paso 2003, no pet.). The evidence is then evaluated as it would be in any other case, and the

presumption has no effect on the burden of persuasion. *In re Rodriguez*, 940 S.W.2d 265, 271 (Tex. App.—San Antonio 1997, writ denied).

There is no evidence that appointment of D.K. as managing conservator of the children would significantly impair their physical health or emotional development or that it was in their best interest. There was no allegation that the children's physical health was an issue. The evidence was clear that D.K. had was well on the road to recovery from her addition, had a job and had future goals. There is no evidence that the Department had any permanent plans for the children. The foster home where they were living may have talked about adoption, but they had not requested adoption at the time of trial.

There is no reasonable way that the trial judge could have found by a preponderance of the evidence that the appointment of D.K. as managing conservator would significantly impair the child's physical health or emotional development or that it was in their best interest. As such, appointment of the Department as sole managing conservator was an abuse of discretion and judgment should be rendered in favor of D.K., removing the Department as managing conservator of the children. In the alternative, this case should be remanded for a new trial on the issue of conservatorship.

**VIII.** **Issue 9: If this Court finds that the judgment terminating Appellant's parental rights should be reversed, whether the appointment of Michael Jones as the sole managing conservator of the M.D.J. should also be reversed.**

There was no evidence presented other than the conclusory statements of the child advocate that he had no reason to believe that it was in M.D.J.'s best interest to be placed with his father. Without any evidence of the best interest of the child regarding conservatorship, the trial court abused its discretion in determining that Michael Jones should be granted sole managing conservatorship of the child.

Moreover, the trial court's actions to deprive Appellant of counsel resulted in her inability to properly cross-examine Michael Jones regarding conservatorship and best interest of M.D.J. From the record, it is clear there were important issues for the judge's consideration that D.K. was unable to properly present. (RR 192-197). For example, she attempted to elicit testimony regarding possible abuse of the child by Michael Jones as well as a pattern on the part of Michael Jones of non-involvement in the child's life. All counsel made objections to D.K.'s questions and the trial court sustained nearly all of those objections. D.K. was prevented from properly presenting her case on appeal and the error probably caused the rendition of an improper judgment. Tex. R. App. P. 44.1.

**PRAYER**

Appellant, D.K., respectfully prays that the Court will reverse the judgment of the trial court and render judgment that the children be returned to her. In the alternative, D.K. prays that this court will reverse the judgment of the trial court and remand this case for a new trial.

Respectfully submitted,

LAW OFFICE OF JANICE L. BERG

*/s/ Janice L. Berg*
**Janice L. Berg**
State Bar No. 24064888
1314 Texas Avenue, Suite 1515
Houston, Texas 77002
Tel: (713) 993-9100 | Fax: (713) 225-0099
Service email: service@janiceberglaw.com
Non-service email: janice@janiceberglaw.com
**ATTORNEY FOR APPELLANT, D.K.**

**CERTIFICATE OF WORD COUNT COMPLIANCE**

I certify that this document was produced on a computer using Microsoft Word 2011 and contains 9,009 words as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1)**.**

*/s/ Janice L. Berg*
Janice L. Berg

## CERTIFICATE OF SERVICE

I certify that on May 1, 2015, I served a copy of this Amended Appellant's Brief on the party listed below by electronic service. My email address for service of process is service@janiceberglaw.com.

*/s/ Janice L. Berg*
Janice L. Berg

**NO. 01-14-00874-CV**

# IN THE COURT OF APPEALS
## FOR THE FIRST JUDICIAL DISTRICT OF TEXAS AT HOUSTON

## IN THE INTEREST OF R.R.H., M.D.J., AND M.K., CHILDREN

**D.K.,**
APPELLANT

## DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES,
APPELLEE

On appeal from the 300th Judicial District Court
Brazoria County, Texas | No. 74587

## APPENDIX

| App. # | Title |
|---|---|
| 1 | Final Order in Suit Affecting the Parent-Child Relationship, signed October 17, 2014 |
| 2 | Order Appointing Counsel for Mother, signed February 4, 2013 |
| 3 | Statement and Request for Appointment of Counsel and Order Appointing Counsel, signed December 12, 2013 |
| 4 | Tex. Fam. Code § 101.007 |
| 5 | Tex. Fam. Code § 107.013 |
| 6 | Tex. Fam. Code § 153.131 |
| 7 | Tex. Fam. Code § 161.001 |

| App. # | Title |
|---|---|
| 8 | Tex. R. App. P. 20.1 |
| 9 | Tex. R. Civ. P. 145 |

# APPENDIX 1
**Final Order in Suit Affecting Parent-Child Relationship, signed October 17, 2014**

CAUSE NO. 74587

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT OF |
| | § | |
| ████████████████████ | § | BRAZORIA COUNTY, TEXAS |
| | § | |
| A CHILD | § | 300TH JUDICIAL DISTRICT |

## FINAL ORDER IN SUIT AFFECTING THE PARENT-CHILD RELATIONSHIP

On September 29, 2014, the Court heard this case.

1. **Appearances**

   1.1. The Department of Family and Protective Services ("the Department") appeared through **TRISHA WEST**, caseworker, and by attorney, **KENYATA RICO** and announced ready.

   1.2. Respondent Mother **DESTINYE GWEN KELLEY** appeared in person and announced ready.

   1.3. Respondent Adjudicated Father **MICHAEL DWAYNE JONES** appeared in person and through attorney of record **MARK JONES** and announced ready.

   1.4. Respondent Alleged Father **RICO RONDALE HALL SR.** although duly and properly notified, did not appear and wholly made default.

   1.5. Respondent Alleged Father **MARQUIS STYLE RAND** although duly and properly notified, did not appear and wholly made default; however, his attorney of record, **LEENA BHASIN**, appeared and announced ready.

   1.6. Respondent **UNKNOWN FATHER** appeared through attorney of record **PHILLIP LARMOND** and announced ready.

   1.7. **JULIE KETTERMAN**, appointed by the Court as Attorney Ad Litem for the children the subject of this suit, appeared and announced ready.

   1.8. **CHRISTIAN LANDRY**, appointed by the Court as Guardian Ad Litem for the children the subject of this suit, appeared and announced ready.

2. **Findings**

   2.1. The Court, having examined the record and heard the evidence and argument of counsel, finds that this Court has jurisdiction of this case and of all the parties and that no other court has continuing, exclusive jurisdiction of this case.

2.2. The Court, having examined the record and heard the evidence and argument of counsel, finds that the State of Texas has jurisdiction of this case pursuant to Subchapter C, Chapter 152, Texas Family Code, by virtue of the fact that Texas is the home state of the children.

2.3. All persons entitled to citation were properly cited.

2.4. The Court finds that **MICHAEL DWAYNE JONES** is the father of the child ████████████████████████

2.5. The Court finds that **RICO RONDALE HALL SR.** is the father of the child ████████████████

2.6. The Court finds that this order sufficiently defines the rights and duties of the parents of the children pursuant to § 153.603, Texas Family Code, and no further parenting plan is appropriate or necessary.

## 3. Jury

A jury was waived, and all questions of fact and of law were submitted to the Court.

## 4. Record

A record of the proceedings was duly reported by Kim Keeler, 10250 CR 200, Alvin, Texas, 77511 (281-352-0863).

## 5. The Children

The Court finds that the following children are the subject of this suit:

5.1.  Name: ████████████
       Sex: ████
       Birth Date: ████████████
       Social Security Number: ████████
       Present Residence: ████████
       Driver's License Number: ██

5.2.  Name: ██████████████████
       Sex: ████
       Birth Date: ████████████
       Social Security Number: ████████
       Present Residence: ██████████████████
       Driver's License Number: ██

5.3. Name: ███████████

Sex: ████

Birth Date: ████████

Social Security Number: ██████

Present Residence: ███████

Driver's License Number: ███

## 6. Managing Conservatorship: ████████

6.1. The Court finds that the appointment of a parent or both parents as managing conservator would not be in the best interest of the child, ████████ because the appointment would significantly impair the child's physical health or emotional development; and it would not be in the best interest of the child to appoint a relative of the child or another person as managing conservator.

6.2. **IT IS THEREFORE ORDERED** that the **DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES** is appointed Permanent Managing Conservator of the child ████████ with the rights and duties specified in § 153.371, Texas Family Code; the Court finds this appointment to be in the best interest of the child.

  6.2.1. **IT IS ORDERED** that, in addition to the rights and duties listed in § 153.371, Texas Family Code, the Department is authorized to consent to the medical care for ████████ under § 266.004, Texas Family Code.

6.3. **IT IS ORDERED** that each parent, who has not previously done so, provide information regarding the medical history of the parent and parent's ancestors on the medical history report form, pursuant to § 161.2021, Texas Family Code.

## 7. Managing Conservatorship: ████████

7.1. The Court finds that the appointment of Respondent Mother as managing conservator would not be in the best interest of the child, ████████ ████, because the appointment would significantly impair the child's physical health or emotional development; and it would not be in the best interest of the child to appoint Respondent Mother as managing conservator.

7.2. **IT IS THEREFORE ORDERED** that **MICHAEL DWAYNE JONES** is appointed Permanent Managing Conservator of the child, ████████ ████ with the rights and duties specified in Chapter 153, subchapter B and in § 153.132, Texas Family Code; the Court finds this appointment to be in the best interest of the child.

7.3. **IT IS FURTHER ORDERED** that as of the date of the signing of this judgment, the **DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES** is **REMOVED** as a Managing and/or Possessory Conservator of the child, ████████ in this case and is **RELEASED** from any further duties, or responsibilities pursuant to any designation or authority that this

court may have granted to the Department during the pendency of this case and prior to the date of this judgment.

8. **Managing Conservatorship:** ███████████████

8.1. The Court finds that the appointment of a parent or both parents as managing conservator would not be in the best interest of the child███████████████ because the appointment would significantly impair the child's physical health or emotional development; and it would not be in the best interest of the child to appoint a relative of the child or another person as managing conservator.

8.2. **IT IS THEREFORE ORDERED** that the **DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES** is appointed Permanent Managing Conservator of the child ███████████████ with the rights and duties specified in § 153.371, Texas Family Code; the Court finds this appointment to be in the best interest of the child.

8.2.1. **IT IS ORDERED** that, in addition to the rights and duties listed in § 153.371, Texas Family Code, the Department is authorized to consent to the medical care for ███████████████ under § 266.004, Texas Family Code.

8.3. **IT IS ORDERED** that each parent, who has not previously done so, provide information regarding the medical history of the parent and parent's ancestors on the medical history report form, pursuant to § 161.2021, Texas Family Code.

9. **Termination of Parental Rights: DESTINYE GWEN KELLEY**

9.1 The Court finds by clear and convincing evidence that Respondent Mother **DESTINYE GWEN KELLEY**:

9.1.1. knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children, pursuant to § 161.001(1)(D), Texas Family Code;

9.1.2. engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children, pursuant to § 161.001(1)(E), Texas Family Code;

9.1.3. failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the children, pursuant to § 161.001(1)(O), Texas Family Code.

9.2.  **IT IS THEREFORE ORDERED** that the parent-child relationship between Respondent Mother **DESTINYE GWEN KELLEY,** and the children, ██████████████████████████████████████ is hereby TERMINATED. The Court finds that such termination of the parent-child relationship is in the best interest of the children.

## 10.  Termination of Parental Rights: ████████████████████████

7.1.  The Court finds by clear and convincing evidence that Respondent Father **RICO RONDALE HALL, SR.:**

7.1.1.  Executed before or after the suit filed an unrevoked or irrevocable affidavit of relinquishment of parental rights, filed with the court on September 29, 2014, as provided by Chapter 161, Texas Family Code.

7.2.  **IT IS THEREFORE ORDERED** that the parent-child relationship between the Respondent Father ████████████████████████████ ████s hereby TERMINATED. The court finds that such termination of the parent-child relationship is in the best interest of the child.

## 11.  Termination of Parental Rights: ████████████████████████

9.1  The Court finds by clear and convincing evidence that Respondent Father **MARQUIS STYLE RAND:**

11.1.1. knowingly placed or knowingly allowed the child, ██████████████ ██████████ to remain in conditions or surroundings which endanger the physical or emotional well-being of the child, pursuant to § 161.001(1)(D), Texas Family Code;

11.1.2. engaged in conduct or knowingly placed the child, **MAESEAN KELLEY,** with persons who engaged in conduct which endangers the physical or emotional well-being of the child, pursuant to § 161.001(1)(E), Texas Family Code;

11.1.3. failed to comply with the provisions of a court order that specifically established the actions necessary for the father to obtain the return of the child, **MAESEAN KELLEY,** who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the child, pursuant to § 161.001(1)(O), Texas Family Code.

11.2.  **IT IS THEREFORE ORDERED** that the parent-child relationship between Respondent Father ██████████████████████████████ ████████s hereby TERMINATED. The Court finds that such termination of the parent-child relationship is in the best interest of the child.

**12. Termination of Parental Rights – UNKNOWN FATHER**

7.1. The Court finds by clear and convincing evidence that Respondent **UNKNOWN FATHER:**

7.1.1. after being served with citation, has not responded by timely filing an admission of paternity or a counterclaim for paternity under Chapter 160; and

7.1.2. he has not registered with the paternity registry under Chapter 160, Texas Family Code.

7.2. **IT IS THEREFORE ORDERED** that the parent-child relationship between the Respondent **UNKNOWN FATHER** and the children, ███████████████ ██████████████ is hereby **TERMINATED**. The court finds that such termination of the parent-child relationship is in the best interest of the children.

**13. Required Information and Notices Regarding the Parties and Children**

13.1. EXCEPT FOR THOSE PERSONS SPECIFICALLY EXEMPTED FROM SUCH DISCLOSURE BELOW, EACH PERSON WHO IS A PARTY TO THIS ORDER IS ORDERED TO NOTIFY EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY OF ANY CHANGE IN THE PARTY'S CURRENT RESIDENCE ADDRESS, MAILING ADDRESS, HOME TELEPHONE NUMBER, NAME OF EMPLOYER, ADDRESS OF EMPLOYMENT, DRIVER'S LICENSE NUMBER AND WORK TELEPHONE NUMBER. THE PARTY IS ORDERED TO GIVE NOTICE OF AN INTENDED CHANGE IN ANY OF THE REQUIRED INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY ON OR BEFORE THE 60TH DAY BEFORE THE INTENDED CHANGE. IF THE PARTY DOES NOT KNOW OR COULD NOT HAVE KNOWN OF THE CHANGE IN SUFFICIENT TIME TO PROVIDE 60-DAY NOTICE, THE PARTY IS ORDERED TO GIVE NOTICE OF THE CHANGE ON OR BEFORE THE FIFTH DAY AFTER THE DATE THAT THE PARTY KNOWS OF THE CHANGE.

13.2. THE DUTY TO FURNISH THIS INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY CONTINUES AS LONG AS ANY PERSON, BY VIRTUE OF THIS ORDER, IS UNDER AN OBLIGATION TO PAY CHILD SUPPORT OR ENTITLED TO POSSESSION OF OR ACCESS TO A CHILD.

13.3. NOTICE TO ANY PEACE OFFICER OF THE STATE OF TEXAS: YOU MAY USE REASONABLE EFFORTS TO ENFORCE THE TERMS OF CHILD CUSTODY SPECIFIED IN THIS ORDER. A PEACE OFFICER WHO RELIES ON THE TERMS OF A COURT ORDER AND THE OFFICER'S AGENCY ARE ENTITLED TO THE APPLICABLE IMMUNITY AGAINST ANY CLAIM, CIVIL OR OTHERWISE,

REGARDING THE OFFICER'S GOOD FAITH ACTS PERFORMED IN THE SCOPE OF THE OFFICER'S DUTIES IN ENFORCING THE TERMS OF THE ORDER THAT RELATE TO CHILD CUSTODY. ANY PERSON WHO KNOWINGLY PRESENTS FOR ENFORCEMENT AN ORDER THAT IS INVALID OR NO LONGER IN EFFECT COMMITS AN OFFENSE THAT MAY BE PUNISHABLE BY CONFINEMENT IN JAIL FOR AS LONG AS TWO YEARS AND A FINE OF AS MUCH AS $ 10,000.

13.4. FAILURE BY A PARTY TO OBEY THE ORDER OF THIS COURT TO PROVIDE EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY WITH THE CHANGE IN THE REQUIRED INFORMATION MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

13.5. Notice shall be given to the other party by delivering a copy of the notice to the party by registered or certified mail, return receipt requested. Notice shall be given to the Court by delivering a copy of the notice either in person to the clerk of the Court or by registered or certified mail addressed to the clerk. Notice to the State Case Registry shall not be required until the registry is established and procedures for notification published by the Title IV-D agency under Chapter 234, Texas Family Code.

13.6. The children's information is provided above; the information required of each party not exempted from such disclosure is:

13.6.1.
| | |
|---|---|
| Name: | **DESTINYE GWEN KELLEY** |
| Social Security number: | **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** |
| Driver's License: | **09856364 TX** |
| Current address: | **336 Verde Drive, Clute, TX 77531** |
| Home telephone number: | **UNKNOWN** |
| Name of employer: | **UNKNOWN** |
| Address of employment: | **UNKNOWN** |
| Work telephone number: | **UNKNOWN** |

13.6.2.
| | |
|---|---|
| Name: | **MICHAEL DWAYNE JONES** |
| Social Security number: | **XXX-XX-X253** |
| Driver's License: | **XXXXX705 TX** |
| Current address: | **309 Nasturtium St, Lake Jackson, TX 77566** |
| Home telephone number: | **UNKNOWN** |
| Name of employer: | **ICS, Inc.** |
| Address of employment: | **2802 FM 523, Oyster Creek, TX 77541** |
| Work telephone number: | **UNKNOWN** |

| 13.6.3. | Name: | **RICO RONDALE HALL SR** |
| | Social Security number: | **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** |
| | Driver's License: | **14817449 TX** |
| | Current address: | **400 Flag Lake Drive, Apt 119, Lake Jackson, TX 77566** |
| | Home telephone number: | **UNKNOWN** |
| | Name of employer: | **UNKNOWN** |
| | Address of employment: | **UNKNOWN** |
| | Work telephone number: | **UNKNOWN** |

| 13.6.4. | Name: | **MARQUIS STYLE RAND** |
| | Social Security number: | **UNKNOWN** |
| | Driver's License: | **UNKNOWN** |
| | Current address: | **4451 Lakeshore Drive, Shreveport, LA 71109** |
| | Home telephone number: | **UNKNOWN** |
| | Name of employer: | **UNKNOWN** |
| | Address of employment: | **UNKNOWN** |
| | Work telephone number: | **UNKNOWN** |

14. **Warnings to Parties**

FAILURE TO OBEY A COURT ORDER FOR CHILD SUPPORT OR FOR POSSESSION OF OR ACCESS TO A CHILD MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

FAILURE OF A PARTY TO MAKE A CHILD SUPPORT PAYMENT TO THE PLACE AND IN THE MANNER REQUIRED BY A COURT ORDER MAY RESULT IN THE PARTY'S NOT RECEIVING CREDIT FOR MAKING THE PAYMENT.

FAILURE OF A PARTY TO PAY CHILD SUPPORT DOES NOT JUSTIFY DENYING THAT PARTY COURT-ORDERED POSSESSION OF OR ACCESS TO A CHILD. REFUSAL BY A PARTY TO ALLOW POSSESSION OF OR ACCESS TO A CHILD DOES NOT JUSTIFY FAILURE TO PAY COURT-ORDERED CHILD SUPPORT TO THAT PARTY.

15. **Continuation of Court-Ordered Ad Litem or Advocate**

15.1. The Court finds that the children, █████████████████████████ the subject of this suit will continue in care, and this Court will continue to review the placement, progress and welfare of these children.

15.2. **IT IS THEREFORE ORDERED** that **JULIE KETTERMAN**, earlier appointed as Attorney Ad Litem to represent the children, is continued in this relationship until further order of this Court or final disposition of this suit.

15.3. **IT IS THEREFORE ORDERED** that **CHRISTIAN LANDRY**, earlier appointed as Guardian Ad Litem to represent the children, is continued in this relationship until further order of this Court or final disposition of this suit.

## 16. Dismissal of Other Court-Ordered Relationships

Except as otherwise provided in this order, any other existing court-ordered relationships with the children the subject of this suit are hereby terminated and any parties claiming a court-ordered relationship with the children are **DISMISSED** from this suit.

16.1. **IT IS FURTHER ORDERED** that the Brazoria County Auditor is hereby authorized to pay **LEENA BHASIN**, as court appointed attorney for Respondent Father, **MARQUIS STYLE RAND**, a sum to be awarded by the Court for her hours of service to date in this cause.

16.2. **IT IS FURTHER ORDERED** that **LEENA BHASIN** is hereby discharged from any further obligation as attorney for Respondent Father, **MARQUIS STYLE RAND**, in this cause.

16.3. **IT IS FURTHER ORDERED** that the Brazoria County Auditor is hereby authorized to pay **PHILLIP LARMOND**, as court appointed attorney for the Unknown Father, a sum to be awarded by the Court for his hours of service to date in this cause.

16.4. **IT IS FURTHER ORDERED** that **PHILLIP LARMOND** is hereby discharged from any further obligation as attorney for Respondent Unknown Father, in this cause.

## 17. Change of Placement

**IT IS ORDERED** that the Department shall immediately notify all parties, including all attorneys and guardians, of its intent to remove the children from their current placement, unless the removal is based upon an emergency. The notice must provide the reason for removal, and once a new placement is determined, the Department shall immediately provide all parties with contact information for the new placement. In the event of an emergency removal, the Department is **ORDERED** to notify all parties of the removal and request a hearing be held no later than the first working day after the date the child is removed from the current placement.

## 18. Denial of Other Relief

**IT IS ORDERED** that all relief requested in this case, and not expressly granted, is denied.

19. **WARNING: APPEAL OF FINAL ORDER, PURSUANT TO § 263.405, TEXAS FAMILY CODE**

A PARTY AFFECTED BY THIS ORDER HAS THE RIGHT TO APPEAL. AN APPEAL IN A SUIT IN WHICH TERMINATION OF THE PARENT-CHILD RELATIONSHIP IS SOUGHT IS GOVERNED BY THE PROCEDURES FOR ACCELERATED APPEALS IN CIVIL CASES UNDER THE TEXAS RULES OF APPELLATE PROCEDURE. FAILURE TO FOLLOW THE TEXAS RULES OF APPELLATE PROCEDURE FOR ACCELERATED APPEALS MAY RESULT IN THE DISMISSAL OF THE APPEAL.

20. **NOTICE TO ANY PEACE OFFICER OF THE STATE OF TEXAS:**

YOU MAY USE REASONABLE EFFORTS TO ENFORCE THE TERMS OF CHILD CUSTODY SPECIFIED IN THIS ORDER. A PEACE OFFICER WHO RELIES ON THE TERMS OF A COURT ORDER AND THE OFFICER'S AGENCY ARE ENTITLED TO THE APPLICABLE IMMUNITY AGAINST ANY CLAIM, CIVIL OR OTHERWISE, REGARDING THE OFFICER'S GOOD FAITH ACTS PERFORMED IN THE SCOPE OF THE OFFICER'S DUTIES IN ENFORCING THE TERMS OF THE ORDER THAT RELATE TO CHILD CUSTODY. ANY PERSON WHO KNOWINGLY PRESENTS FOR ENFORCEMENT AN ORDER THAT IS INVALID OR NO LONGER IN EFFECT COMMITS AN OFFENSE THAT MAY BE PUNISHABLE BY CONFINEMENT IN JAIL FOR AS LONG AS TWO YEARS AND A FINE OF AS MUCH AS $10,000.

SIGNED and ENTERED this _____ day of **OCT 1 7 2014** , 2014.

_____
JUDGE PRESIDING

**APPROVED AS TO FORM:**

_(signature)_

KENYATA RICO
Attorney for Petitioner
Department of Family and Protective Services

_(signature)_

STEPHANIE SAMMONS
Authorized Representative of Petitioner

see attached page

JULIE KETTERMAN
Attorney Ad Litem for the Children

_(signature)_

CHRISTIAN LANDRY
Guardian Ad Litem for the Children

see attached page

MICHAEL DWAYNE JONES
Presumed Father of the Child MARQUES DAVEON JONES

see attached page

MARK JONES
Attorney for the Respondent Father MICHAEL DWAYNE JONES

_(signature)_

LEENA BHASIN
Attorney for the Respondent Father MARQUIS STYLE RAND

see attached page

PHILLIP LARMOND
Attorney for Unknown Father

**APPROVED AS TO FORM:**


_____
KENYATA RICO
Attorney for Petitioner
Department of Family and Protective Services


_____
STEPHANIE SAMMONS
Authorized Representative of Petitioner


_____
JULIE KETTERMAN
Attorney Ad Litem for the Children


_____
CHRISTIAN LANDRY
Guardian Ad Litem for the Children


_____
MICHAEL DWAYNE JONES
Presumed Father of the Child MARQUES DAVEON JONES


_____
MARK JONES
Attorney for the Respondent Father MICHAEL DWAYNE JONES


_____
LEENA BHASIN
Attorney for the Respondent Father MARQUIS STYLE RAND

_____
PHILLIP LARMOND
Attorney for Unknown Father


_____
Final Order in Suit Affecting Parent-Child Relationship
Page 11

74587 / 300th
ASAP 2013

**APPROVED AS TO FORM:**

_____
KENYATA RICO
Attorney for Petitioner
Department of Family and Protective Services

_____
STEPHANIE SAMMONS
Authorized Representative of Petitioner

_____
JULIE KETTERMAN
Attorney Ad Litem for the Children

_____
CHRISTIAN LANDRY
Guardian Ad Litem for the Children

_____
MICHAEL DWAYNE JONES
Presumed Father of the Child MARQUES DAVEON JONES

_____
MARK JONES
Attorney for the Respondent Father MICHAEL DWAYNE JONES

_____
LEENA BHASIN
Attorney for the Respondent Father MARQUIS STYLE RAND

_____
PHILLIP LARMOND
Attorney for Unknown Father

74587 / 3CCbh
ASAP 2013

001045

APPROVED AS TO FORM:

_____
KENYATA RICO
Attorney for Petitioner
Department of Family and Protective Services

_____
STEPHANIE SAMMONS
Authorized Representative of Petitioner

_____
JULIE KETTERMAN
Attorney Ad Litem for the Children

_____
CHRISTIAN LANDRY
Guardian Ad Litem for the Children

_____
MICHAEL DWAYNE JONES
Presumed Father of the Child MARQUES DAVEON JONES

_____
MARK JONES
Attorney for the Respondent Father MICHAEL DWAYNE JONES

_____
LEENA BHASIN
Attorney for the Respondent Father MARQUIS STYLE RAND

See attached page
_____
PHILLIP LARMOND
Attorney for Unknown Father

001046

**APPENDIX 2**
Order Appointing Counsel
for Mother, signed
February 4, 2013

*PHILLIP DAVIS 362.5*          74587

CAUSE NO. ~~2012-67145~~

| | |
|---|---|
| IN THE INTEREST OF | IN THE DISTRICT COURT OF |
| ███████████████ | |
| _____ | HARRIS COUNTY, TEXAS |
| | |
| **CHILDREN** | **246TH JUDICIAL DISTRICT** |

## ORDER APPOINTING ATTORNEY AD LITEM FOR MOTHER

The Court finds that appointment of an Attorney *Ad Litem* for *DESTINYE KELLEY* ,**MOTHER** is mandatory under §107.013, Texas Family Code, Rule 244, Texas Rules of Civil Procedure, or other provisions of law.

**IT IS THEREFORE ORDERED** that *Ricardo Ramos* , a licensed attorney at law of this state, is appointed Attorney *Ad Litem* for the **MOTHER** *DESTINEY KELLEY* .

2 4027648

SIGNED this 4 day of *Feby* , *2013* .

_____
JUDGE PRESIDING

**FILED**
Chris Daniel
District Clerk

FEB 0 4 2013

Time: _____
Harris County, Texas
By _____
Deputy

ME
9:03

Order Appointing Attorney Ad Litem for Parent or Party
Page 1

000069

2009-43215 / 246th
Amanuensis 4.0

13357

IMAGED

2013 OCT 23 AM 10: 52
DISTRICT CLERK
BRAZORIA COUNTY, TEXAS
FILED FOR RECORD

# APPENDIX 3

**Statement and Request for Appointment of Counsel and Order Appointing Counsel, signed December 12, 2013**

NO. 74587

IN THE ~~MATTER OF THE MARRIAGE OF~~ INTEREST OF

███████████████████████

A Child

IN THE DISTRICT COURT OF

BRAZORIA COUNTY, TEXAS

300TH JUDICIAL DISTRICT

FILED
at 9:00 o'clock G M.
DEC 13 2013
Clerk of District Court Brazoria Co., Texas
By Rhonda Barchak
DEPUTY

## STATEMENT AND REQUEST FOR APPOINTMENT OF COUNSEL

On this 12th day of December, A.D. _____, I have been advised by the Judge of the 300th Judicial District Court of my right to representation by counsel in the trial of the charge pending against me. I certify that I am without means to employ counsel of my own choosing and I hereby request the Court to appoint counsel for me.

_____
RESPONDENT

SUBSCRIBED AND SWORN TO before me on the _____ day of DEC 12 2013, _____.

RHONDA BARCHAK, DISTRICT CLERK
BRAZORIA COUNTY, TEXAS

BY: _____
Deputy

## ORDER APPOINTING COUNSEL

On this _____ day of DEC 12 2013, _____, came on to be heard the Request for Appointment of Counsel of D. Kelly, Respondent in the above styled and numbered cause. It appearing to the Court that Respondent is without means to employ counsel and is indigent, Toni Kelley, ESQUIRE, is hereby appointed and assigned to represent Respondent in the enforcement proceeding pending before this trial court, including but not limited to representing Respondent on trial on the merits and future compliance hearings. This appointment shall remain in effect until further Order of the Court. THE CONTEMPT/COMPLIANCE HEARING IS SET FOR 9:00 A.M./1:00 P.M. ON THE _____ DAY OF DEC 12 2013, _____.

_____
JUDGE PRESIDING

000226                                                                11596

NO. _____

IN THE MATTER OF THE MARRIAGE OF:

_____

AND

_____

IN THE DISTRICT COURT OF

BRAZORIA COUNTY, TEXAS

300TH JUDICIAL DISTRICT

## QUESTIONNAIRE - FINANCIAL RESOURCES

1. AGE: 29    MARRIED: _____    SINGLE: X    DIVORCE: _____
   NUMBER OF DEPENDENTS: 4    AGES: 13, 9, 8, 2 yrs

2. EMPLOYED: YES _____    NO X    WHERE: _____
   HOW LONG: _____    HOURLY RATE: _____

3. IS SPOUSE EMPLOYED: YES _____    NO _____    WHERE: _____
   HOW LONG: _____    HOURLY RATE: _____

4. LIST PROPERTY OWNED: _____
   _____
   _____

5. LIST OF NECESSARY MONTHLY EXPENSES: _____
   _____

6. LIST OUTSTANDING OBLIGATIONS OR DEBTS: _____
   _____

7. ARE YOU ON BOND: YES _____    NO X    AMOUNT: $_____
   WHO POSTED: _____    WHEN: _____

_____
RESPONDENT

SUBSCRIBED AND SWORN TO before me on the _____ day of _____, _____.

RHONDA BARCHAK, DISTRICT CLERK
BRAZORIA COUNTY, TEXAS

BY: _____
**Deputy**

000227

# APPENDIX 4
## Tex. Fam. Code § 101.007

> **Vernon's Texas Statutes and Codes Annotated**
>   Family Code (Refs & Annos)
>     Title 5. The Parent-Child Relationship and the Suit Affecting the Parent-Child Relationship (Refs & Annos)
>       Subtitle A. General Provisions
>         Chapter 101. Definitions

V.T.C.A., Family Code § 101.007

§ 101.007. Clear and Convincing Evidence

[Currentness]

"Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.

**Credits**

Added by Acts 1995, 74th Leg., ch. 20, § 1, eff. April 20, 1995.

Notes of Decisions (43)

V. T. C. A., Family Code § 101.007, TX FAMILY § 101.007
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**
© 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX 5
## Tex. Fam. Code § 107.013

Vernon's Texas Statutes and Codes Annotated
  Family Code (Refs & Annos)
    Title 5. The Parent-Child Relationship and the Suit Affecting the Parent-Child Relationship (Refs & Annos)
      Subtitle A. General Provisions
        Chapter 107. Special Appointments and Social Studies (Refs & Annos)
          Subchapter B. Appointments in Certain Suits (Refs & Annos)
            Part 1. Appointments in Suits by Governmental Entity

V.T.C.A., Family Code § 107.013

§ 107.013. Mandatory Appointment of Attorney ad Litem for Parent

Effective: September 1, 2013
Currentness

(a) In a suit filed by a governmental entity under Subtitle E[1] in which termination of the parent-child relationship or the appointment of a conservator for a child is requested, the court shall appoint an attorney ad litem to represent the interests of:

(1) an indigent parent of the child who responds in opposition to the termination or appointment;

(2) a parent served by citation by publication;

(3) an alleged father who failed to register with the registry under Chapter 160 and whose identity or location is unknown; and

(4) an alleged father who registered with the paternity registry under Chapter 160, but the petitioner's attempt to personally serve citation at the address provided to the registry and at any other address for the alleged father known by the petitioner has been unsuccessful.

(b) If both parents of the child are entitled to the appointment of an attorney ad litem under this section and the court finds that the interests of the parents are not in conflict, the court may appoint an attorney ad litem to represent the interests of both parents.

(c) Repealed by Acts 2013, 83rd Leg., ch. 810 (S.B. 1759), § 11.

(d) A parent who claims indigence under Subsection (a) must file an affidavit of indigence in accordance with Rule 145(b) of the Texas Rules of Civil Procedure before the court can conduct a hearing to determine the parent's indigence under this section.

(e) A parent who the court has determined is indigent for purposes of this section is presumed to remain indigent for the duration of the suit and any subsequent appeal unless the court, after reconsideration on the motion of the parent, the attorney ad litem for the parent, or the attorney representing the governmental entity, determines that the parent is no longer indigent due to a material and substantial change in the parent's financial circumstances.

**Credits**

Added by Acts 1995, 74th Leg., ch. 751, § 15, eff. Sept. 1, 1995. Amended by Acts 1997, 75th Leg., ch. 561, § 3, eff. Sept. 1, 1997; Acts 2001, 77th Leg., ch. 821, § 2.11, eff. June 14, 2001; Acts 2003, 78th Leg., ch. 262, § 1, eff. Sept. 1, 2003; Acts 2005, 79th Leg., ch. 268, § 1.06, eff. Sept. 1, 2005; Acts 2007, 80th Leg., ch. 526, § 1, eff. June 16, 2007; Acts 2011, 82nd Leg., ch. 75 (H.B. 906), § 1, eff. Sept. 1, 2011; Acts 2013, 83rd Leg., ch. 810 (S.B. 1759), §§ 2, 11, eff. Sept. 1, 2013.

Notes of Decisions (65)

Footnotes

1       V.T.C.A., Family Code § 261.001 et seq.

V. T. C. A., Family Code § 107.013, TX FAMILY § 107.013

Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**                                     © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX 6
## Tex. Fam. Code § 153.131

Vernon's Texas Statutes and Codes Annotated
  Family Code (Refs & Annos)
    Title 5. The Parent-Child Relationship and the Suit Affecting the Parent-Child Relationship (Refs & Annos)
      Subtitle B. Suits Affecting the Parent-Child Relationship
        Chapter 153. Conservatorship, Possession, and Access (Refs & Annos)
          Subchapter C. Parent Appointed as Sole or Joint Managing Conservator

V.T.C.A., Family Code § 153.131

§ 153.131. Presumption That Parent to be Appointed Managing Conservator

Currentness

(a) Subject to the prohibition in Section 153.004, unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.

(b) It is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child. A finding of a history of family violence involving the parents of a child removes the presumption under this subsection.

**Credits**
Added by Acts 1995, 74th Leg., ch. 20, § 1, eff. April 20, 1995. Amended by Acts 1995, 74th Leg., ch. 751, § 32, eff. Sept. 1, 1995; Acts 1997, 75th Leg., ch. 1193, § 20, eff. Sept. 1, 1997.

Notes of Decisions (303)

V. T. C. A., Family Code § 153.131, TX FAMILY § 153.131
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX 7
## Tex. Fam. Code § 161.001

Vernon's Texas Statutes and Codes Annotated
  Family Code (Refs & Annos)
    Title 5. The Parent-Child Relationship and the Suit Affecting the Parent-Child Relationship (Refs & Annos)
      Subtitle B. Suits Affecting the Parent-Child Relationship
        Chapter 161. Termination of the Parent-Child Relationship (Refs & Annos)
          Subchapter A. Grounds

V.T.C.A., Family Code § 161.001

§ 161.001. Involuntary Termination of Parent-Child Relationship

Effective: September 1, 2011
[Currentness]

The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence:

(1) that the parent has:

(A) voluntarily left the child alone or in the possession of another not the parent and expressed an intent not to return;

(B) voluntarily left the child alone or in the possession of another not the parent without expressing an intent to return, without providing for the adequate support of the child, and remained away for a period of at least three months;

(C) voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months;

(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

(F) failed to support the child in accordance with the parent's ability during a period of one year ending within six months of the date of the filing of the petition;

(G) abandoned the child without identifying the child or furnishing means of identification, and the child's identity cannot be ascertained by the exercise of reasonable diligence;

(H) voluntarily, and with knowledge of the pregnancy, abandoned the mother of the child beginning at a time during her pregnancy with the child and continuing through the birth, failed to provide adequate support or medical care for the

mother during the period of abandonment before the birth of the child, and remained apart from the child or failed to support the child since the birth;

(I) contumaciously refused to submit to a reasonable and lawful order of a court under Subchapter D, Chapter 261;[1]

(J) been the major cause of:

(i) the failure of the child to be enrolled in school as required by the Education Code; or

(ii) the child's absence from the child's home without the consent of the parents or guardian for a substantial length of time or without the intent to return;

(K) executed before or after the suit is filed an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided by this chapter;

(L) been convicted or has been placed on community supervision, including deferred adjudication community supervision, for being criminally responsible for the death or serious injury of a child under the following sections of the Penal Code or adjudicated under Title 3 for conduct that caused the death or serious injury of a child and that would constitute a violation of one of the following Penal Code sections:

(i) Section 19.02 (murder);

(ii) Section 19.03 (capital murder);

(iii) Section 19.04 (manslaughter);

(iv) Section 21.11 (indecency with a child);

(v) Section 22.01 (assault);

(vi) Section 22.011 (sexual assault);

(vii) Section 22.02 (aggravated assault);

(viii) Section 22.021 (aggravated sexual assault);

(ix) Section 22.04 (injury to a child, elderly individual, or disabled individual);

(x) Section 22.041 (abandoning or endangering child);

(xi) Section 25.02 (prohibited sexual conduct);

(xii) Section 43.25 (sexual performance by a child);

(xiii) Section 43.26 (possession or promotion of child pornography);

(xiv) Section 21.02 (continuous sexual abuse of young child or children);

(xv) Section 20A.02(a)(7) or (8) (trafficking of persons); and

(xvi) Section 43.05(a)(2) (compelling prostitution);

(M) had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E) or substantially equivalent provisions of the law of another state;

(N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months, and:

(i) the department or authorized agency has made reasonable efforts to return the child to the parent;

(ii) the parent has not regularly visited or maintained significant contact with the child; and

(iii) the parent has demonstrated an inability to provide the child with a safe environment;

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child;

(P) used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and:

(i) failed to complete a court-ordered substance abuse treatment program; or

(ii) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance;

(Q) knowingly engaged in criminal conduct that has resulted in the parent's:

(i) conviction of an offense; and

(ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition;

(R) been the cause of the child being born addicted to alcohol or a controlled substance, other than a controlled substance legally obtained by prescription, as defined by Section 261.001;

(S) voluntarily delivered the child to a designated emergency infant care provider under Section 262.302 without expressing an intent to return for the child; or

(T) been convicted of:

(i) the murder of the other parent of the child under Section 19.02 or 19.03, Penal Code, or under a law of another state, federal law, the law of a foreign country, or the Uniform Code of Military Justice that contains elements that are substantially similar to the elements of an offense under Section 19.02 or 19.03, Penal Code;

(ii) criminal attempt under Section 15.01, Penal Code, or under a law of another state, federal law, the law of a foreign country, or the Uniform Code of Military Justice that contains elements that are substantially similar to the elements of an offense under Section 15.01, Penal Code, to commit the offense described by Subparagraph (i); or

(iii) criminal solicitation under Section 15.03, Penal Code, or under a law of another state, federal law, the law of a foreign country, or the Uniform Code of Military Justice that contains elements that are substantially similar to the elements of an offense under Section 15.03, Penal Code, of the offense described by Subparagraph (i); and

(2) that termination is in the best interest of the child.

**Credits**

Added by Acts 1995, 74th Leg., ch. 20, § 1, eff. April 20, 1995. Amended by Acts 1995, 74th Leg., ch. 709, § 1, eff. Sept. 1, 1995; Acts 1995, 74th Leg., ch. 751, § 65, eff. Sept. 1, 1995; Acts 1997, 75th Leg., ch. 575, § 9, eff. Sept. 1, 1997; Acts 1997, 75th Leg., ch. 1022, § 60, eff. Sept. 1, 1997; Acts 1999, 76th Leg., ch. 1087, § 1, eff. Sept. 1, 1999; Acts 1999, 76th Leg., ch. 1390, § 18, eff. Sept. 1, 1999; Acts 2001, 77th Leg., ch. 809, § 1, eff. Sept. 1, 2001; Acts 2005, 79th Leg., ch. 508, § 2, eff. Sept. 1, 2005; Acts 2007, 80th Leg., ch. 593, § 3.30, eff. Sept. 1, 2007; Acts 2009, 81st Leg., ch. 86, § 1, eff. Sept. 1, 2009; Acts 2011, 82nd Leg., ch. 1 (S.B. 24), § 4.02, eff. Sept. 1, 2011.

Notes of Decisions (1879)

Footnotes

1       V.T.C.A., Family Code § 261.301 et seq.

V. T. C. A., Family Code § 161.001, TX FAMILY § 161.001

Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX 8
Tex. R. App. P. 20.1

---

> Vernon's Texas Rules Annotated
>   Texas Rules of Appellate Procedure
>     Section One. General Provisions
>       Rule 20. When Party is Indigent (Refs & Annos)

TX Rules App.Proc., Rule 20.1

20.1. Civil Cases

Currentness

(a) *Establishing Indigence*.

(1) By Certificate. If the appellant proceeded in the trial court without advance payment of costs pursuant to a certificate under Texas Rule of Civil Procedure 145(c) confirming that the appellant was screened for eligibility to receive free legal services under income guidelines used by a program funded by Interest on Lawyers Trust Accounts or the Texas Access to Justice Foundation, an additional certificate may be filed in the appellate court confirming that the appellant was rescreened after rendition of the trial court's judgment and again found eligible under program guidelines. A party's affidavit of inability accompanied by the certificate may not be contested.

(2) By Affidavit. A party who cannot pay the costs in an appellate court may proceed without advance payment of costs if:

(A) the party files an affidavit of indigence in compliance with this rule;

(B) the claim of indigence is not contestable, is not contested, or, if contested, the contest is not sustained by written order; and

(C) the party timely files a notice of appeal.

(3) By Presumption of Indigence. In a suit filed by a governmental entity in which termination of the parent-child relationship or managing conservatorship is requested, a parent determined by the trial court to be indigent is presumed to remain indigent for the duration of the suit and any subsequent appeal, as provided by section 107.013 of the Family Code, and may proceed without advance payment of costs.

(b) *Contents of Affidavit*. The affidavit of indigence must identify the party filing the affidavit and must state what amount of costs, if any, the party can pay. The affidavit must also contain complete information about:

(1) the nature and amount of the party's current employment income, government-entitlement income, and other income;

(2) the income of the party's spouse and whether that income is available to the party;

---

(3) real and personal property the party owns;

(4) cash the party holds and amounts on deposit that the party may withdraw;

(5) the party's other assets;

(6) the number and relationship to the party of any dependents;

(7) the nature and amount of the party's debts;

(8) the nature and amount of the party's monthly expenses;

(9) the party's ability to obtain a loan for court costs;

(10) whether an attorney is providing free legal services to the party without a contingent fee;

(11) whether an attorney has agreed to pay or advance court costs; and

(12) if applicable, the party's lack of the skill and access to equipment necessary to prepare the appendix, as required by Rule 38.5(d).

(c) *When and Where Affidavit Filed*.

(1) Appeals. An appellant must file the affidavit of indigence in the trial court with or before the notice of appeal. The prior filing of an affidavit of indigence in the trial court pursuant to Texas Rule of Civil Procedure 145 does not meet the requirements of this rule, which requires a separate affidavit and proof of current indigence, except in cases in which a presumption of indigence has been established as provided by Rule 20.1(a)(3). An appellee who is required to pay part of the cost of preparation of the record under Rule 34.5(b)(3) or 34.6(c)(3) must file an affidavit of indigence in the trial court within 15 days after the date when the appellee becomes responsible for paying that cost.

(2) Other Proceedings. In any other appellate court proceeding, except in cases in which a presumption of indigence has been established as provided by Rule 20.1(a)(3), a petitioner must file the affidavit of indigence in the court in which the proceeding is filed, with or before the document seeking relief. A respondent who requests preparation of a record in connection with an appellate court proceeding must file an affidavit of indigence in the appellate court within 15 days after the date when the respondent requests preparation of the record, except in cases in which a presumption of indigence has been established as provided by Rule 20.1(a)(3).

(3) Extension of Time. The appellate court may extend the time to file an affidavit of indigence if, within 15 days after the deadline for filing the affidavit, the party files in the appellate court a motion complying with Rule 10.5(b). But the court

may not dismiss the appeal or affirm the trial court's judgment on the ground that the appellant has failed to file an affidavit or a sufficient affidavit of indigence unless the court has first provided the appellant notice of the deficiency and a reasonable time to remedy it.

(d) *Duty of Clerk*.

(1) Trial Court Clerk. If the affidavit of indigence is filed with the trial court clerk under (c)(1), the clerk must promptly send a copy of the affidavit to the appropriate court reporter.

(2) Appellate Court Clerk. If the affidavit of indigence is filed with the appellate court clerk and if the filing party is requesting the preparation of a record, the appellate court clerk must:

(A) send a copy of the affidavit to the trial court clerk and the appropriate court reporter; and

(B) send to the trial court clerk, the court reporter, and all parties, a notice stating the deadline for filing a contest to the affidavit of indigence.

(e) *Contest to Indigence*.

(1) If Affidavit Filed. The clerk, the court reporter, the court recorder, or any party may challenge an affidavit that is not accompanied by a TAJF certificate by filing--in the court in which the affidavit was filed--a contest to the affidavit. The contest must be filed on or before the date set by the clerk if the affidavit was filed in the appellate court, or within 10 days after the date when the affidavit was filed if the affidavit was filed in the trial court. The contest need not be sworn.

(2) If Indigence Presumed. The clerk, the court reporter, the court recorder, or any party may challenge a presumption of indigence that has been established as provided by Rule 20.1(a)(3) by filing a contest in the trial court. The contest must be filed within three days after a notice of appeal is filed. The contest must state specific facts demonstrating a good faith belief that the parent is no longer indigent due to a material and substantial change in the parent's financial circumstances. The contest need not be sworn.

(f) *No Contest Filed*. Unless a contest is timely filed, no hearing will be conducted, the affidavit's allegations will be deemed true, and the party will be allowed to proceed without advance payment of costs.

(g) *Burden of Proof*.

(1) If Affidavit Filed. If a contest is filed, the party who filed the affidavit of indigence must prove the affidavit's allegations. If the indigent party is incarcerated at the time the hearing on a contest is held, the affidavit must be considered as evidence and is sufficient to meet the indigent party's burden to present evidence without the indigent party's attending the hearing.

(2) If Indigence Presumed. If a presumption of indigence has been established as provided by Rule 20.1(a)(3). the party filing the contest must prove that the parent is no longer indigent due to a material and substantial change in the parent's financial circumstances since the most recent determination of indigence.

(h) *Decision in Appellate Court*. If the affidavit of indigence is filed in an appellate court and a contest is filed, the court may:

(1) conduct a hearing and decide the contest;

(2) decide the contest based on the affidavit and any other timely filed documents;

(3) request the written submission of additional evidence and, without conducting a hearing, decide the contest based on the evidence; or

(4) refer the matter to the trial court with instructions to hear evidence and grant the appropriate relief.

(i) *Hearing and Decision in the Trial Court*.

(1) Notice Required. If the affidavit of indigence is filed in the trial court or a presumption of indigence has been established as provided by Rule 20.1(a)(3) and a contest is filed, or if the appellate court refers a contest to the trial court, the trial court must set a hearing and notify the parties and the appropriate court reporter of the setting.

(2) Time for Hearing. The trial court must either conduct a hearing or sign an order extending the time to conduct a hearing:

(A) within 10 days after the contest was filed, if initially filed in the trial court; or

(B) within 10 days after the trial court received a contest referred from the appellate court.

(3) Extension of Time for Hearing. The time for conducting a hearing on the contest must not be extended for more than 20 days from the date the order is signed.

(4) Time for Written Decision; Effect. Unless--within the period set for the hearing--the trial court signs an order sustaining the contest, the affidavit's allegations will be deemed true or the presumption of indigence will continue unabated, and the party will be allowed to proceed without advance payment of costs.

(j) *Review of Trial Court's Decision*.

(1) Motion. If the trial court sustains a contest, the party claiming indigence may seek review of the court's order by filing a motion challenging the order with the appellate court without advance payment of costs.

(2) Time for Filing; Extension. The motion must be filed within 10 days after the order sustaining the contest is signed, or within 10 days after the notice of appeal is filed, whichever is later. The appellate court may extend the time for filing on motion complying with Rule 10.5(b).

(3) Record. Within three days after a motion is filed, the trial court clerk and court reporter, respectively, must prepare, certify, and file the clerk's record and reporter's record of the indigence hearing, if any, and the hearing on the contest. The record must be provided without advance payment of costs.

(4) Ruling by Operation of Law. If the appellate court does not deny the motion within 10 days after it is filed, the motion is granted by operation of law

(5) No Review of Order Overruling Contest. An order overruling a contest is not subject to appellate review.

(k) *Record to be Prepared Without Prepayment.* If a party establishes indigence, the trial court clerk and the court reporter must prepare the appellate record without prepayment.

(l) *Partial Payment of Costs.* If the party can pay or give security for some of the costs, the court must order the party, in writing, to pay or give security, or both, to the extent of the party's ability. The court will allocate the payment among the officials to whom payment is due.

(m) *Later Ability to Pay.* If a party who has proceeded in the appellate court without having to pay all the costs is later able to pay some or all of the costs, the appellate court may order the party to pay costs to the extent of the party's ability.

(n) *Costs Defined.* As used in this rule, costs means:

(1) a filing fee relating to the case in which the affidavit of inability is filed; and

(2) the charges for preparing the appellate record in that case.

**Credits**

Eff. Sept. 1, 1997. Amended by Supreme Court March 10, 2008, and Aug. 20, 2008, eff. Sept. 1, 2008. Approved by the Court of Criminal Appeals Sept. 30, 2008, eff. Sept. 30, 2008. Amended by Supreme Court Aug. 31, 2011, eff. Sept. 1, 2011; Feb. 13, 2012, eff. March 1, 2012.

**Editors' Notes**

**NOTES AND COMMENTS**

Comment to 2008 change: Subdivision 20.1(a) is added to provide, as in Texas Rule of Civil Procedure 145, that an affidavit of indigence accompanied by an IOLTA or other Texas Access to Justice Foundation certificate cannot

be challenged. Subdivision 20.1(c)(1) is revised to clarify that an affidavit of indigence filed to proceed in the trial court without advance payment of costs is insufficient to establish indigence on appeal; a separate affidavit must be filed with or before the notice of appeal. Subdivision 20.1(c)(3) is revised to provide that an appellate court must give an appellant who fails to file a proper appellate indigence affidavit notice of the defect and an opportunity to cure it before dismissing the appeal or affirming the judgment on that basis. *See Higgins v. Randall County Sheriff's Office, 193 S.W.3d 898 (Tex. 2006)*. The limiting phrase "under (c)(2)" in Subdivision 20.1(d)(2) is deleted to clarify that the appellate clerk's duty to forward copies of the affidavit to the trial court clerk and the court reporter, along with a notice setting a deadline to contest the affidavit, applies to affidavits on appeal erroneously filed in the appellate court, not only to affidavits in other appellate proceedings properly filed in the appellate court under subdivision 20.1(c)(2). Although Subdivision 3.1(g) defines "court reporter" to include court recorder, subdivision 20.1(e) is amended to make clear that a court recorder can contest an affidavit.

Notes of Decisions (208)

Rules App. Proc., Rule 20.1, TX R APP Rule 20.1
Current with amendments received through 3/15/2015

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX 9
## Tex. R. Civ. P. 145

Vernon's Texas Rules Annotated
   Texas Rules of Civil Procedure
     Part II. Rules of Practice in District and County Courts
      Section 6. Costs and Security Therefor

TX Rules of Civil Procedure, Rule 145

Rule 145. Affidavit on Indigency

Currentness

(a) *Affidavit*. In lieu of paying or giving security for costs of an original action, a party who is unable to afford costs must file an affidavit as herein described. A "party who is unable to afford costs" is defined as a person who is presently receiving a governmental entitlement based on indigency or any other person who has no ability to pay costs.

Upon the filing of the affidavit, the clerk must docket the action, issue citation and provide such other customary services as are provided any party.

(b) *Contents of Affidavit*. The affidavit must contain complete information as to the party's identity, nature and amount of governmental entitlement income, nature and amount of employment income, other income, (interest, dividends, etc.), spouse's income if available to the party, property owned (other than homestead), cash or checking account, dependents, debts, and monthly expenses. The affidavit shall contain the following statements: "I am unable to pay the court costs. I verify that the statements made in this affidavit are true and correct." The affidavit shall be sworn before a notary public or other officer authorized to administer oaths. If the party is represented by an attorney on a contingent fee basis, due to the party's indigency, the attorney may file a statement to that effect to assist the court in understanding the financial condition of the party.

(c) *IOLTA Certificate*. If the party is represented by an attorney who is providing free legal services, without contingency, because of the party's indigency and the attorney is providing services either directly or by referral from a program funded by the Interest on Lawyers Trust Accounts (IOLTA) program, the attorney may file an IOLTA certificate confirming that the IOLTA-funded program screened the party for income eligibility under the IOLTA income guidelines. A party's affidavit of inability accompanied by an attorney's IOLTA certificate may not be contested.

(d) *Contest*. The defendant or the clerk may contest an affidavit that is not accompanied by an IOLTA certificate by filing a written contest giving notice to all parties and, in an appeal under Texas Government Code, section 28.052, notice to both the small claims court and the county clerk. A party's affidavit of inability that attests to receipt of government entitlement based on indigency may be contested only with respect to the veracity of the attestation. Temporary hearings will not be continued pending the filing of the contest. If the court finds at the first regular hearing in the course of the action that the party (other than a party receiving a governmental entitlement based on indigency) is able to afford costs, the party must pay the costs of the action. Reasons for such a finding must be contained in an order. Except with leave of court, no further steps in the action will be taken by a party who is found able to afford costs until payment is made. If the party's action results in monetary award, and the court finds sufficient monetary award to reimburse costs, the party must pay the costs of the action. If the court finds that another party to the suit can pay the costs of the action, the other party must pay the costs of the action.

(e) *Attorney's Fees and Costs*. Nothing herein will preclude any existing right to recover attorney's fees, expenses or costs from any other party.

**Credits**

Oct. 29, 1940, eff. Sept. 1, 1941. Amended by orders of Dec. 5, 1983, eff. April 1, 1984; July 15, 1987, Jan. 1, 1988; Sept. 19, 2005, eff. Dec. 1, 2005.

Notes of Decisions (59)

Vernon's Ann. Texas Rules Civ. Proc., Rule 145, TX R RCP Rule 145
Current with amendments received through 3/15/2015

---

**End of Document**
© 2015 Thomson Reuters. No claim to original U.S. Government Works.